IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION

| | | |
|---|---|---|
| ROOSEVELT GLENN, SR. and DARRYL KEITH PINKINS, SR., | ) ) ) | Case No. 2:18-cv-00150-JTM-JEM |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CITY OF HAMMOND, *et al.*, | ) ) | |
| Defendants | ) ) ) ) | |

BRIEF IN SUPPORT OF DEFENDANT MICHAEL
SOLAN'S MOTION FOR JUDGMENT ON THE PLEADINGS
<u>AND TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>

Jackie M. Bennett, Jr., Atty. No. 4112-49
Peter S. French, Atty. No. 16716-49
Ann O'Connor McCready, Atty. No. 32836-53
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204

*Attorneys for Defendant Michael Solan*

## TABLE OF CONTENTS

1.    STATEMENT OF FACTS ................................................................. 2

    1.1    **Prior Litigation of Glenn's Claims** ................................... 3

    1.2    **Prior Litigation of Pinkins's Claims** ............................... 5

    1.3    **The Current Case** .......................................................... 7

2.    LEGAL STANDARD ..................................................................... 8

    2.1    **Rule 12(b)(1)** .................................................................... 8

    2.2    **Rule 12(c)** ......................................................................... 8

3.    ARGUMENT ................................................................................ 9

    3.1    **Plaintiffs' Claims are Barred by a Lack of Subject Matter Jurisdiction, Collateral Estoppel, Res Judicata, and Waiver (All Counts).** ...................... 9

        3.1.1    **Plaintiffs should be barred from raising any issue regarding Solan allegedly manipulating a false identification from M.W.** ....................................... 12

        3.1.2    **Plaintiffs are barred litigating whether Solan fabricated evidence.** ................................................. 13

        3.1.3    **Plaintiffs are barred from arguing Solan withheld exculpatory evidence.** ............................................ 15

    3.2    **Plaintiffs' Federal and State Malicious Prosecution Claims Fail to Meet All Required Elements (Counts II and X)** ........................ 16

        3.2.1    **Solan did not institute the prosecution** .................... 17

        3.2.2    **Solan had probable cause to arrest Plaintiffs** ........... 18

        3.2.3    **The original action did not terminate in Plaintiff's favor** ........... 19

        3.2.4    **Plaintiffs do not allege that Solan acted with Malice** ........... 20

    3.3    **Plaintiffs Failed to Allege Facts to Support Their Conspiracy to Deprive Constitutional Rights Claim (Count VI).** ........................ 21

**3.4**    **Plaintiffs Failed to Support Their Failure to Intervene Claim (Count V).** ....................................................................................**22**

**3.5**    **Plaintiffs' State Law Claims Are Barred for Failure to Comply with the Indiana Tort Claims Act (Counts VIII, X, XI, and XII).** ...........................................................................**23**

    **3.5.1**   **Plaintiffs' state law claims are barred because Plaintiffs allege Solan was acting within the scope of his employment.** ...........................................................................**23**

    **3.5.2**   **Plaintiffs failed to file a mandatory tort claims notice.** ...................**24**

**3.6**    **Plaintiffs' Remaining State Law Claims Also Fail on the Merits** ............**24**

    **3.6.1**   **Solan is not an employer and cannot be liable for negligent supervision** ...........................................................................**24**

    **3.6.2**   **Solan's alleged conduct was not extreme or outrageous** .................**25**

    **3.6.3**   **Plaintiffs allege no impact to support negligent infliction of Emotional distress** ...........................................................................**25**

**4.**    **CONCLUSION** ...........................................................................**25**

Plaintiffs' narrative gives the impression that there are recently uncovered injustices that should now be rectified by this Court. In reality, Plaintiffs' Complaint is full of stale issues and repetitive allegations raised—and rejected—in prior state and federal post-conviction relief proceedings. And, the few issues not previously litigated are based on facts and circumstances of which Plaintiffs were long aware, and thus should have been raised in those prior proceedings. These claims cannot be relitigated because federal courts do not have subject matter jurisdiction to act as a parallel or appellate court of review over state courts. Additionally, these claims are barred by collateral estoppel, res judicata, and waiver.

Plaintiffs cannot make out a claim for malicious prosecution because their complaint does not allege that Solan—a police detective—prosecuted them. The charges underlying that allegation were brought by the prosecutor. Further, Plaintiffs' arrests and prosecutions were based on a judicial determination of probable cause not based on the facts Plaintiffs now allege were fabricated. That probable cause determination cannot be relitigated here. Nor was the prosecution terminated in a manner that would indicate innocence. Plaintiffs were granted post-conviction relief and the State made clear that it believed the charges remained meritorious, but that it was dismissing them solely because it could not retry Plaintiffs due to the twenty-seven year passage of time.

Plaintiffs' claims for conspiracy and failure to intervene fail because there are no facts alleged that support those causes of action. The Complaint is merely a recitation of the elements of those causes of action.

Each of the state law claims must be dismissed under the Indiana Tort Claims Act

("ITCA"). The ITCA is an absolute bar to a personal action against a government employee acting within the scope of his employment and Plaintiffs' Complaint alleges that Solan was acting within the scope of his employment. Plaintiffs also failed to provide the mandatory tort claim notice which also bars this action.

The remaining state law claims also fail on their merits as Solan was not an employer who could be liable for negligent supervision, the Complaint does not allege extreme and outrageous conduct to support intentional infliction of emotional distress, and the Complaint alleges no physical impact resulting in physical injury that could support the negligent infliction of emotional distress claim.

Judgment should be entered for Solan on all of Plaintiffs' claims.

## 1.   STATEMENT OF FACTS

On December 7, 1989, M.W.'s[1] car was hit from behind. (Compl. ¶ 21.) [2] When she exited her vehicle, five men stole her purse and gun and forced her into their car. (*Id.* ¶ 22.) The five men covered M.W.'s face with a pair of coveralls and took turns raping her as they drove around for the next five hours (*Id.* ¶¶ 22–23, 25.) M.W. still had those coveralls when the men released her. (*Id.*)

Defendant Michael Solan ("Solan"), then a detective with the Hammond Police Department, investigated the crimes. (*Id.* ¶ 51.) During Solan's initial interview of M.W., she described her assailants and their car. (*Id.* ¶¶ 26–29.) Through his investigation, Solan determined that the coveralls came from Luria Brothers and after investigating a number

---

[1] To respect the privacy of the victim, only her initials will be used.

[2] The facts in this motion are the allegations in the Complaint which must be accepted as true for purposes of this motion only. *Baker v. Potter*, 175 Fed. App'x 759, 760 (7th Cir. 2006).

of Luria Brothers employees, determined that they belonged to Plaintiffs. (*Id.* ¶ 51–53.) Plaintiffs were arrested on January 2, 1990. (*Id.* ¶ 54.)

After the arrest, Solan and other officers continued their investigation. (*Id.* ¶ 56.) A vehicle of a fellow suspect was examined for fingerprints. *Id.* Blood and hair samples from Plaintiffs were processed by the Indiana State Police Lab. (*Id.* ¶¶ 58–67.) Semen stains on M.W.'s clothing were DNA tested. (*Id.* ¶ 70.) Three individual DNA banding patterns were identified, one of which belonged to M.W. (*Id.*) The remaining two banding patterns did not match Plaintiffs. (*Id.*) Solan notified M.W. that the two DNA banding patterns did not match Plaintiffs. (*Id.* ¶ 72.)

At a May 1990 court proceeding, M.W. informed Solan and the prosecutor that Pinkins was one of her assailants. (*Id.* ¶ 82.) Solan produced a written report of this identification. (*Id.*) Additionally, Solan identified two fellow inmates, George Hennington and Reggie West, who made statements and testified against Plaintiffs, claiming that Plaintiffs spoke to them about being involved in the crime against M.W. (*Id.* ¶¶ 85–95.)

## 1.1    Prior Litigation of Glenn's Claims

The Lake Superior Court held a hearing on January 2, 1990 and found that probable cause existed to arrest Plaintiffs. (Ex. A.) [3] Plaintiff Roosevelt Glenn, Sr. ("Glenn") was arrested that day. (Compl. ¶ 54.) On January 8, 1990, Glenn was charged with rape, criminal deviate conduct, and robbery. (Ex. B.) A jury found Glenn guilty of rape. Glenn was sentenced to thirty-six years imprisonment. (Ex. C.)

---

[3] This Court can take judicial notice of the prior legal proceedings involving each Plaintiff. *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137 n.14 (7th Cir. 2008). All exhibits attached to this motion are to judicially noticeable documents filed in prior court proceedings.

On August 29, 1995, the Indiana Court of Appeals affirmed the verdict. (Ex. D.) Glenn filed a petition for post-conviction relief in Lake Superior Court making several claims related to Solan including that "[n]ewly discovered evidence" showed the testimony of Hennington and West was false." (Ex. E.) The court denied the petition. (Ex. F.)

Glenn appealed raising four issues: (1) was Glenn entitled to a new trial based on newly discovered evidence; (2) had Glenn procedurally defaulted his claim that his 1993 rape conviction was obtained in violation of due process; (3) was Glenn's trial counsel ineffective; and (4) had Glenn procedurally defaulted his freestanding claim of fundamental error? *Glenn v. State*, No. 45A05-05-0808-PC-462, 2009 WL 1099255 (Ind. Ct. App. Apr. 22, 2009). The Court of Appeals affirmed the denial of Glenn's petition. *Id.* Addressing the due process claim, the court wrote "[t]he State suggests, and we agree, that Glenn's *Brady* claim is a nonstarter because there is no indication that the State suppressed any evidence, favorable or otherwise." *Id.* at *13. The Indiana Supreme Court denied transfer. *Glenn v. State*, 919 N.E.2d 554 (Ind. 2009).

Glenn then filed a Petition for Writ of Habeas Corpus in this Court raising two issues: (1) were his due process rights violated by the admission of hair and blood evidence the State knew or should have known was "false and misleading"; and (2) was his trial counsel ineffective in connection with the admission of this evidence. (Ex. G.) This Court dismissed Glenn's petition with prejudice as untimely and declined to issue a certificate of appealability. *Glenn v. Salinas*, No. 2:10-cv-00351, 2011 WL 3348098, at *1 (N.D. Ind. Aug. 3, 2011). In addition to finding Glenn's Petition untimely, the Court also found

that Glenn had not proven his actual innocence because in addition to the evidence pre-
sented by the State,

> [T]he jury heard testimony from Glenn denying his involvement in the of-
> fense and from Glenn's alibi witness, and obviously found this testimony
> to be lacking in credibility. Given the evidence in the record, the Court can-
> not conclude that it is more likely than not no reasonable juror would find
> Glenn guilty beyond a reasonable doubt.

*Id.* (citations omitted).

Glenn filed a notice of appeal and application for certificate of appealability to the
Seventh Circuit on September 2, 2011. (Ex. H.) On December 14, 2011, the Seventh Circuit
denied the request for a certificate of appealability because "[w]e find no substantial
showing of the denial of a constitutional right." (Ex. I.)

On May 5, 2016, Glenn filed for successive post-conviction relief in the Indiana
Court of Appeals "to pursue a successor post-conviction legal claim of newly discovered
evidence under Indiana common law and I.C. 35-38-7 et seq. based on TrueAllele Case-
work System DNA genotyping results." (Ex. J.) Thus, this proceeding related to new is-
sues, not those previously adjudicated by the Court of Appeals' 2009 opinion. The Court
of Appeals granted leave and Glenn filed his petition in Lake Superior Court. (Exs. K–L.)
Instead of opposing Glenn's Petition, the State filed a motion to grant Glenn's petition
because the new DNA evidence, while not exonerating Glenn, did undermine the State's
theory which warranted a new trial. (Ex. M.) The State did not concede Glenn's innocence
but stated that it was unable to retry the meritorious charges due to the twenty-seven
year passage of time, and thus the charges were dismissed. (Exs. M-N.*)*

### 1.2     Prior Litigation of Pinkins's Claims

At the same January 2, 1990, hearing, the court also found probable cause to arrest Plaintiff Darryl Pinkins ("Pinkins"), and he was arrested that same day. (Ex. A). Pinkins was charged with rape, criminal deviate conduct, and robbery. (Compl. ¶ 54.) A jury found him guilty on all three charges and Pinkins was sentenced to sixty-five years imprisonment. (Exs. O–P.).

The Indiana Court of Appeals granted Pinkins's Leave to proceed with post-conviction relief in lieu of a direct appeal. (Ex. Q.). Pinkins's petition raised two issues: (1) ineffective assistance of counsel and (2) DNA testing done in 2001 constituted newly discovered evidence. *(*Ex. R.) Among others claims, Pinkins asserted his trial counsel failed to object to the victim's pre-trial identification and the victim's in-court identification of him. (*Id.*) The trial court denied Pinkins's petition. (Exs. S-T.) That Court expressly found that (1) there was no evidence that Solan showed M.W. photographs in her home in January 1990; (2) there was no evidence that the State conducted or orchestrated an in-court identification on May 4, 1990; and (3) there was no evidence that there was an identification procedure in the prosecutor's office on January 16, 1991. (Ex. S)

Pinkins appealed and the Indiana Court of Appeals consolidated the appeals from Pinkins's criminal trial and post-conviction proceeding. (Ex. U.) Issues raised on appeal included ineffective assistance of counsel for not moving to suppress the pre-trial identification evidence and M.W's in-court identification of the Pinkins. *Id.* The Court of Appeals affirmed both judgments stating "As the facts set forth below will demonstrate, we think ***this case is reflective of exemplary police work***." *Pinkins v. State*, 799 N.E.2d 1079, 1082 (Ind. Ct. App. 2003) (emphasis added). The Indiana Supreme Court denied transfer.

*Pinkins v. State*, 812 N.E.2d 797 (Ind. 2004).

Pinkins then filed a Petition for Writ of Habeas Corpus in this Court. (Ex. V.) Pinkins raised three grounds for relief: (1) the State used false and misleading evidence, (2) ineffective assistance of trial counsel, and (3) ineffective assistance of appellate counsel. *Id.* This Court denied Pinkins's Petition. *Pinkins v. Davis*, No. 3:05-cv-00134, 2005 WL 2128193, at *1 (N.D. Ind. Aug. 30, 2005). The Court found Pinkins's claim of false or misleading evidence procedurally defaulted, stating "the jury was the constitutional instrument to evaluate the believability and credibility of all witnesses." *Id.* The Seventh Circuit affirmed. *Pinkins v. Buss*, 215 Fed. App'x 535 (7th Cir. 2007).  The United States Supreme Court denied *certiorari*. *Pinkins v. Buss*, 552 U.S. 892 (2007).

Pinkins filed a petition for successive post-conviction relief with the Indiana Court of Appeals on May 5, 2015. The Court of Appeals granted Pinkins's Petition, limited solely to the claim of newly discovered evidence. (Ex. W.) Again this proceeding was based on this new information and did not challenge issues decided by the Court of Appeals in its 2004 opinion. Pinkins filed his Verified Successive Petition for Post-Conviction Relief in Lake Superior Court on June 10, 2015. (Ex. X.)

Instead of opposing Pinkins's Petition, the State filed a motion to grant his petition because the new DNA evidence, while not exonerating him, did undermine the State's theory which warranted a new trial. (Ex. Y.) The State did not concede Pinkins's innocence but stated that it was unable to retry the meritorious charges due to the twenty-seven year passage of time, and thus the charges were dismissed. (Exs. Y–Z.)

### 1.3    The Current Case

7

The Complaint alleges twelve causes of action including seven brought under 42 U.S.C. § 1983 and five state law claims. (*Id.* ¶¶ 197-218.)

Plaintiffs' claims against Solan are based on three alleged acts. First, Plaintiffs allege Solan took mugshots to M.W.'s home and manipulated her into identifying Pinkins as one of her attackers (*Id.* ¶¶ 80–81) and that Solan engaged in "unduly suggestive photo array procedures" by speaking to M.W. before her in-court identification of Pinkins and by showing her a photo of Pinkins before her January 1991 deposition. (*Id.* ¶¶ 82–84.) Second, Plaintiffs claim that Solan fabricated false statements from witnesses. (*Id.* ¶¶ 85–95.) Third, Plaintiffs allege that Solan withheld exculpatory evidence including specifically the recovery of M.W's gun. (*Id.* ¶¶ 96–100.)

## 2.    LEGAL STANDARD

### 2.1    Rule 12(b)(1)

Federal courts do not serve as parallel or appellate review courts of state court rulings. 28 U.S.C. § 1738. After a state court has ruled on an issue, a federal court cannot relitigate that issue. *Mannex Corp. v. Rozands*, 462 F.2d 688 (5th Cir. 1972). "[F]ederal courts must give a state court's judgment the same preclusive effect in subsequent litigation that state's own courts would give." *S. Bend Lathe, Inc. v. Amsted Indus., Inc.*, 925 F.2d 1043, 1046 n.1 (7th Cir. 1991). Once the court concludes that it lacks subject-matter jurisdiction, it must dismiss the entire complaint. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2002).

### 2.2    Rule 12(c)

Motions under Rule 12(c) are decided under the same standard as a Rule 12(b)(6)

motion. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). As such, the allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The motion should be granted if the plaintiff fails to allege the "grounds" for his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(c) motion can be based on judicially noticeable facts. *See Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012). Judicial notice may be taken of prior judicial proceedings. *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137 n.14 (7th Cir. 2008). Judicial notice does not convert the motion into to a motion for summary judgment. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

### 3.   ARGUMENT

#### 3.1   Plaintiffs' Claims are Barred by a Lack of Subject Matter Jurisdiction, Collateral Estoppel, Res Judicata, and Waiver (All Counts).

Lack of subject matter jurisdiction and collateral estoppel each bar Plaintiffs from relitigating the findings from both state and federal courts established during their multiple state and federal post-conviction proceedings. Further, the doctrines of res judicata and waiver bar Plaintiffs from now attempting to raise any issue that could have been raised during those proceedings. Plaintiffs have had ample opportunities to make their case to various courts, and have repeatedly failed to convince those courts that the claims in the Complaint are meritorious.

Collateral estoppel applies when a party to prior litigation attempts to relitigate

an issue that was actually and necessarily decided against that party by a court of competent jurisdiction. *Taylor v. Stewart*, 479 Fed. App'x 10, 13 (7th Cir. 2012). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). For Indiana courts, "the prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Griffin v. State*, 717 N.E.2d 73, 84 (Ind. 1999) (citations omitted).

Under Indiana law, a prior judgment is given preclusive effect in a subsequent proceeding brought by the party against whom the prior judgment was entered when four conditions are satisfied: (1) a final judgment exists from a court of competent jurisdiction; (2) the issue was actually litigated; (3) the party against whom estoppel is being asserted had a full and fair opportunity to litigate the issue in question; and (4) it is not otherwise unfair to preclude relitigation. *In re C.M.*, 675 N.E.2d 1134, 1137 (Ind. Ct. App. 1997).

Res judicata will bar an action when (1) the former judgment was rendered by a court of competent jurisdiction; (2) the matter now in issue was, or might have been, determined in the former action; (3) the former action was between the same parties to the present action; and (4) the judgment in the former action was rendered on the merits. *Ind. Ins. Co. v. Am. Comty. Servs., Inc.*, 817 N.E.2d 1147, 1155 (Ind. Ct. App. 1999). Further, res judicata is applicable in a civil rights action to bar suit even as to issues which could have

10

been, but were not, litigated in a prior state proceeding. *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir. 1982). Additionally, a plaintiff cannot bring a claimed civil rights violation if it was previously known or knowable during an appeal to the Indiana Court of Appeals. *Wells v. State*, 482 N.E.2d 786, 788-89 (Ind. 1985); *Lane v. State*, 445 N.E.2d 965, 966-969 (Ind. 1983). Any unraised claim is, therefore, deemed waived. *Williams v. State*, 455 N.E.2d 299, 303 (Ind. 1983); *Jackson v. State*, 826 N.E.2d 120, 127 (Ind. Ct. App. 2005).

Plaintiffs have litigated these alleged issues in numerous post-conviction relief proceedings. Post-conviction procedures do not afford a petitioner with a "super-appeal." *See, e.g., Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001). A petitioner's collateral challenge to their conviction must be based on independent grounds, enumerated in Ind. R. Post-Conviction Remedies § 1. If an issue is known and available on direct appeal, but not raised, it is procedurally defaulted as a basis for relief in subsequent proceedings. *Williams v. State*, 808 N.E.2d 652, 659 (Ind. 2004). Issues raised and decided adversely on direct appeal, or issues known and not previously raised, are subject to res judicata or waiver in subsequent post-conviction relief proceedings. *Id.* Therefore, the factual issues raised and judgments issued in Plaintiffs' post-conviction relief proceedings were separate and independent from their criminal trials and direct appeals. Furthermore, a judgment entered following a post-conviction relief proceeding is a "final judgment." Ind. R. Post-Conviction Remedies § 6.

The final judgments reached in Plaintiffs' state and federal post-conviction relief proceedings are still valid and enforceable judgments. Therefore, the conclusions of law and findings of fact established by those post-conviction relief judgments cannot now be

relitigated because of a lack of subject matter jurisdiction and the doctrines of collateral estoppel, res judicata, and waiver. Solan hereby adopts and incorporates Sections II(A) and III(A) of the Hammond Defendants' Brief [DKT. 71] asserting lack of subject matter jurisdiction.

### 3.1.1   Plaintiffs should be barred from raising any issue regarding Solan allegedly manipulating a false identification from M.W.

Plaintiffs have had numerous opportunities in multiple venues to litigate the questions of whether Solan manipulated M.W. into falsely identifying them. Plaintiffs allege that Solan took individual mugshots to M.W.'s home, showed her the pictures, and manipulated her into identifying Pinkins as one of her attackers (Compl. ¶¶ 80–81) and that Solan engaged in "unduly suggestive photo-array procedures" by speaking to M.W. before her in court identification of Pinkins and by showing her a photo of Pinkins before her January 1991 deposition (*Id.* ¶¶ 82–84) These are not new issues.

Pinkins actually litigated these questions several times, including during his first post-conviction relief hearing nearly seventeen years ago, which resulted in the court finding:

> The evidence showed that M.W. did not view the photographs [brought] to her home by Detective Solan. . . . The evidence showed that neither the State nor its agents orchestrated M.W.'s encounter with the petitioner in-court on May 4, 1990, at which time she recognized him as the first man to approach her after her car was bumped and the fourth man to assault her. . . .The evidence revealed that neither the prosecution team or Detective Solan showed M.W. a single photograph of the petitioner for the purpose of discussing facial hair. No evidence was presented to refute that testimony. . . . M.W.'s in-court identification of the petitioner during trial was [] permissible since she had an independent basis for the identification.

(Ex. S.)

Despite these conclusions, Pinkins continued to litigate this issue including in a consolidated criminal and post-conviction relief appeal to the Indiana Court of Appeals, a Habeas Corpus petition to this Court, as well as his appeal that followed to the Seventh Circuit. These courts repeatedly found no evidence to support these claims. The Indiana Court of Appeals found no issue with M.W.'s identification of Pinkins and it expressly found that the photograph shown to M.W. in 1991 was not an "unduly suggestive pre-trial procedure." *Pinkins*, 799 N.E.2d at 1094–95 (Ind. Ct. App. 2003). The Northern District of Indiana reached the same conclusion when it found his ineffective assistance of trial counsel claim "without merit." *Pinkins v. Davis*, No. 3:05CV0134, 2005 WL 2128193, at *1–*2 (N.D. Ind. Aug. 30, 2005), *aff'd*, *Pinkins v. Buss*, 215 Fed. App'x 535 (7th Cir. 2007).

Even though this identification did not involve him directly, Glenn also argued the issue of M.W.'s identification of Pinkins in both his state post-conviction relief petition and his Petition for Writ of Habeas Corpus. (Exs. E, G.) Therefore, both Plaintiffs are now barred from relitigating the findings of these previous courts. They cannot simply present this information as a new allegation to be addressed by this Court when multiple courts have already squarely considered—and rejected—this same assertion. *See Myers v. Maxson*, 51 N.E.3d 1267, 1280–81 (Ind. Ct. App. 2016) (holding that when identification procedures were known to criminal defendant during trial, *Brady* was not implicated and there was no civil rights violation).

### 3.1.2   Plaintiffs are barred from litigating whether Solan fabricated evidence.

13

In a similar manner, Plaintiffs carefully elide the prior litigation relating to their allegation that Solan procured false statements from George Hennington and Reggie West. (Compl. ¶¶ 85–95.) Glenn raised this issue of "snitch testimony" in his state post-conviction relief petition. (Ex. E.) Glenn presented evidence alleging the unreliability of Hennington's and West's testimonies, hoping that the court would give them "little weight." (*Id.*) Glenn mentioned the issue of Hennington's testimony again in his habeas petition. (Ex. G.) This Court did not explicitly address the issue in its dismissal of Glenn's petition, but the fact that it was raised in those proceedings precludes Plaintiffs from raising it again here. *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir. 1982).

Further, to the extent Plaintiffs now attempt to repackage this issue as a fabrication argument, Plaintiffs have known about and had the opportunity to assert this issue in their criminal trials, appeals, and post-conviction relief proceedings and failed to do so over two decades. Any alleged "fabrication" or "falsification" of testimony, if it existed, should have been challenged in the prior proceedings. Therefore, and as courts have consistently found, Plaintiffs have waived their right to now assert this issue. *See Alexander v. City of S. Bend*, 320 F. Supp. 2d 761, 774–75 (N.D. Ind. 2004).

In *Alexander,* the plaintiff was convicted and imprisoned on charges of assault and rape. After serving over three years in prison, the plaintiff's conviction was vacated due to newly discovered DNA evidence. *Id.* After his release, the plaintiff brought a civil rights claim against the city and specific police officers challenging the manner in which the police officers conducted photo arrays, witness interviews, investigative lineups, and other investigative procedures *Id.* at 765–66.

14

This Court found that the plaintiff was precluded from raising these issues, high-lighting that the plaintiff did not move to exclude evidence of the defendants' investigatory techniques during either of his criminal trials, even though he had the ability to do so. *Id.* at 764. Further, the Court pointed out that the plaintiff's trial counsel was able to cross-examine all witnesses subject to the arrays, interviews, and lineup. *Id.* at 764–65. In addition, the defendants' identification procedures were addressed on appeal. *Id.* at 765. Based on the totality of the evidence, the Court found that the plaintiff had been provided a full and fair opportunity to litigate these issues.

The decision of this Court in *Alexander* is entirely applicable to this case. Plaintiffs did not move to exclude the testimony of Hennington or West in their respective trials. Plaintiffs' trial counsel had the opportunity to cross-examine each witness regarding their testimony. Glenn even raised the issue of this testimony in his state post-conviction relief petition. Therefore, Plaintiffs are now precluded from relitigating all issues arising from the testimony of these witnesses.

### 3.1.3  Plaintiffs are barred from arguing Solan withheld exculpatory evidence.

Plaintiffs also allege Solan withheld the fact that the gun stolen from M.W. had been recovered, that Solan interviewed the person from whom the gun was recovered, and then failed to investigate or disclose the discovery of the gun to the prosecutor or defense. (Compl. ¶¶ 9–100.) The state court record, however, reveals that this information was not withheld from Plaintiffs. Pinkins acknowledged in his habeas petition that on May 5, 2002, the State filed a notice stating that the victim's gun was recovered from a

minor. (Ex. V.)Thus, Plaintiffs' allegation that Solan did not "disclose the information to the prosecutor or the defense," is simply untrue and any assertion to the contrary should be barred outright as having already been addressed in those prior proceedings.

More importantly, however, as this is not a new issue, Plaintiffs were given an opportunity to raise this issue in their post-conviction relief proceedings and they should not be allowed to relitigate it in this case. Any attempt to present these outdated claims again, or repackage them as new claims, should be barred by operation of this Court's lack of subject matter jurisdiction and the doctrines of collateral estoppel, res judicata, and waiver.

### 3.2    Plaintiffs' Federal and State Malicious Prosecution Claims Fail to Meet All Required Elements (Counts II and X).

Plaintiffs bring a malicious prosecution claim under both federal and state law (Counts II and X) but neither of those counts states the necessary elements of the cause of action. A federal malicious prosecution claim is rarely appropriate because "individuals do not have 'a federal right not to be summoned into court and prosecuted without probable cause, under either the Fourth Amendment or the Fourteenth Amendment's Procedural Due Process Clause.'" *Ray v. City of Chi.*, 629 F.3d 660, 664 (7th Cir. 2011) (quoting *Tully v. Barada*, 559 F.3d 591, 594 (7th Cir. 2010)).

A plaintiff asserting malicious prosecution under § 1983 must show "(1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996). To establish a state law claim for

malicious prosecution, Plaintiffs must establish that: (1) the defendant instituted or caused to be instituted a prosecution; (2) defendant acted with malice; (3) defendant acted without probable cause; and (4) the original action terminated in Plaintiffs' favor. *City of New Haven v. Reichart*, 748 N.E.2d 374, 378 (Ind. 2001). Plaintiffs allegations make clear that Solan did not institute or cause the prosecution of Plaintiffs, Solan did not act with malice in investigating the charges made against Plaintiffs, probable cause existed for Solan to arrest Plaintiffs, and the original action did not terminate in Plaintiffs' favor, therefore the Complaint does not state a cause of action for malicious prosecution.

### 3.2.1   Solan did not institute the prosecution.

A malicious prosecution claim cannot be brought against an investigating officer because the officer's role is in effectuating and maintaining a seizure, not in initiating and pursuing a criminal prosecution. *See Washington v. Summerville*, 127 F.3d 552, 559–60 (7th Cir. 1997). The principal player in carrying out a prosecution is not the police officer, but the prosecutor. *Id.* at 559. For this reason, "a malicious prosecution claim against police officers is an anomaly." *Id.* at 559 (citing *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (J. Ginsburg, concurring)). When a plaintiff alleges there was no probable cause for him to be arrested or prosecuted, his claim against the arresting officer would be one for false arrest, not malicious prosecution. *Id.* A plaintiff cannot "refashion[] his false arrest . . . claim under the guise of a malicious prosecution claim." *Id.*

Plaintiffs' malicious prosecution claim cannot be maintained against Solan. Solan merely investigated Plaintiffs' actions and provided his findings to the prosecutor. It was the prosecutor who prosecuted. Plaintiffs do not allege otherwise, but repeatedly refer to

17

Solan's role as investigator. Therefore, Plaintiffs' malicious prosecution claim fails.

### 3.2.2   Solan had probable cause to arrest Plaintiffs.

There was a judicial determination of probable cause to charge and arrest Plaintiffs in the criminal case and thus that issue is res judicata—Plaintiffs cannot now allege an absence of probable cause. (Ex. A.) A court's determination of probable cause in a criminal case is *prima facie* evidence of probable cause in a civil suit for malicious prosecution. *Conwell v. Beatty*, 667 N.E.2d 768, 778 (Ind. Ct. App. 1996); *see also Swanson v. Horseshoe Hammond, LLC*, 445 Fed. App'x. 868, 870 (7th. Cir. 2011). The *prima facie* case may be rebutted by evidence that shows the finding of probable cause was induced by false testimony or fraud, or other improper means. *Conwell*, 667 N.E.2d at 778. When a judicial determination of probable cause has been made, the prima facie case cannot be overcome merely by an allegation of a negligent failure to investigate thoroughly where there is some factual basis for bringing a claim. *Id.*

Here, Plaintiffs have not connected any of the probable cause findings to the facts they allege were false or fabricated. Solan testified at the probable cause hearing and submitted a sworn affidavit. (Ex. A.) None of that testimony referred to the allegedly fabricated evidence—that is, M.W.'s identification of Pinkins, the testimony of Hennington, the testimony of West, the recovered gun, or DNA evidence from semen or hair. (*Id.*) Therefore, probable cause was found without reliance on any alleged false or fabricated evidence.

Plaintiffs' allegations focus entirely on the period of time after they were already under arrest and probable cause had been found.  Plaintiffs have identified nothing to

refute the *prima facie* case established by the court's prior ruling on probable cause. All factual allegations in the Complaint claiming that Solan "manipulated witnesses, fabricated evidence, and [withheld] exculpatory evidence" occurred after the date of the probable cause hearing. (Compl. ¶¶ 80–100.) Therefore, Plaintiffs have failed to allege any factual misconduct or other impropriety with respect to the court's finding of probable cause. As such, the judicial probable cause finding bars the malicious prosecution claim.

### 3.2.3   The original action did not terminate in Plaintiffs' favor.

Plaintiffs strive to gloss over the final prong of this test through inartful and ambiguous pleading, alleging vaguely that their post-conviction motions were granted and the charges were dismissed. (Compl. ¶¶ 112–14, 156, 209.) Although the charges were voluntarily dismissed by the State, there was no termination in Plaintiffs' favor as that term is used in malicious prosecution cases. "In the civil malicious prosecution context, the majority rule is that a criminal proceeding has been terminated in favor of the defendant when a prosecutor formally abandons the proceedings via a *nolle prosequi*, **unless he abandons the prosecution for reasons not indicative of the defendant's innocence**." *Washington v. Summerville*, 127 F.3d 553, 557 (7th Cir. 1997) (emphasis added). To determine whether proceedings against Plaintiffs were terminated in their favor, the court must look past the form and title of the disposition and examine the circumstances surrounding dismissal of charges. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001); *see also Wilkins v. DeReyes*, 528 F.3d 790, 803 (10th Cir. 2008) ("To decide whether *nolle prosequi* constitutes a favorable termination, we look to the stated reasons for the dismissal as well as the circumstances surrounding it in an attempt to determine whether the dismissal

19

indicates the accused's innocence.").

In moving to dismiss the charges the State wrote, "[f]rom the State's analysis, the petitioner **cannot be exonerated** by the DNA evidence. However, the new DNA analysis undermines the State's theory of the case put forth at the petitioner's trial. The State hereby acknowledges that the newly discovered evidence warrants a new trial." (Ex. M (emphasis added.) In other words, the State still believes the charges were meritorious but too much time had passed for the State to effectively retry Plaintiffs. Significantly there was no acknowledgement from the State, much less the Court, declaring Plaintiffs' innocence. The dismissal of the criminal charges under these circumstance was not a termination in Plaintiffs' favor.

### 3.2.4    Plaintiffs do not allege that Solan acted with Malice.

Plaintiffs' have not alleged sufficient facts showing that Solan acted with malice. Plaintiffs' claim, without any additional explanation, that "[t]he Defendants' misconduct, as described in this Count, was objectively unreasonable and was undertaken intentionally with malice and willful indifference." (Compl. ¶ 158.) However, the Complaint provides no factual allegations to support this claim, and it points to no malice on the part of Solan, specifically.[4]

Malice can be inferred from a total lack of probable cause, failure to make reasonable or suitable inquiry, and a showing of personal animosity. *F.W. Woolworth Co., Inc. v. Anderson*, 471 N.E.2d 1249, 1254 (Ind. Ct. App. 1984). Solan clearly acted **with** probable

---

[4] The Complaint only mentions the word "malice" three times, never with specific factual allegations to support the assertion. (Compl. ¶¶ 158, 176, 187.)

cause—a point already judicially decided that cannot now be relitigated. Plaintiffs have also failed to allege any of these other reasons to support their claim of malice. There is nothing to suggest personal animosity toward Plaintiffs, and rather than alleging a failure to make reasonable or suitable inquiry, Plaintiffs provide ample allegations showing quite the opposite. And, indeed, even if they failed to include facts showing that reasonable and suitable inquiry was made, the Indiana Court of Appeals has already noted the "exemplary police work" that led to Plaintiffs' arrests. *Pinkins*, 799 N.E.2d at 1082. Therefore, Plaintiffs' malicious prosecution claim fails.

### 3.3    Plaintiffs Failed to Allege Facts to Support Their Conspiracy to Deprive Constitutional Rights Claim (Count VI).

Plaintiffs have not plausibly alleged a conspiracy claim against Solan in his individual capacity. To prove conspiracy under § 1983, a plaintiff must show (1) a state official or private individual reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individuals were willful participants in joint activity with the State or its agents. *Logan v. Wakins*, 64 F.3d 577, 583 (7th Cir. 2011). The plaintiff is required to plead something more than bare allegations. *Wilmon v. Porter Cnty.*, No. 2:12-CV-278, 2013 WL 3467198, at *5 (N.D. Ind. July 10, 2013). Courts require that a plaintiff allege the parties, the general purpose, and the approximate date of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). When a complaint does not contain any facts to support a conspiracy claim, it must be dismissed. *Winchester v. Marketti*, No. 11-CV-9224, 2012 WL 2076375, at *5 (N.D. Ill. June 8, 2012).

Here, Plaintiffs allege no facts that would support their conspiracy claim against

Solan. There are no facts alleged in the Complaint regarding any communication or agreements involving Solan or any other defendants. There are no alleged details providing an approximate date of the alleged conspiracy. *Loubser*, 440 F.3d at 443. Plaintiffs' conspiracy allegations are vague, conclusory, and must be dismissed. *See Stanford v. Glowacki*, No. 12-CV-7502, 2013 WL 6447947, at *3 (N.D. Ill. Dec. 6, 2013) (court dismissing a § 1983 conspiracy claim because the complaint failed to make any factual allegations that tie the Defendants to a conspiracy); *Fox v. Ghosh*, No. 09-C-5453, 2010 WL 345899, at *5 (N.D. Ill. Jan. 26, 2010) ("Even before . . . *Twombly* . . . and . . . *Iqbal*, a bare allegation of conspiracy was not enough to survive a motion to dismiss for failure to state a claim.").

### 3.4 Plaintiffs Failed to Support Their Failure to Intervene Claim (Count V).

Plaintiffs also failed to allege a failure to intervene claim against Solan. A failure to intervene claim is linked with a plaintiff's underlying constitutional claims. *Abdullahi v. City of Madison*, 423 F.3d 763, 767–78 (7th Cir. 2005). If Plaintiffs' underlying constitutional claim fails, their failure to intervene claim also fails. *Stanford*, 2013 WL 6447947, at *3.

An officer who is present and fails to intervene to prevent other law enforcement officers from infringing an individual's constitutional rights is liable under § 1983 only if that officer had reason to (1) know that a constitutional violation was committed and (2) had a realistic opportunity to prevent it. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). Rather than cite any facts that would support such a claim, the allegations are vague and formulaic. Like Plaintiffs' conspiracy claims, the allegations in the Complaint merely allege the elements of a failure to intervene claim. There are no factual allegations

that specifically allege Solan's knowledge of other law enforcement officers' constitutional violation or any mention of a realistic opportunity to prevent it. On the contrary, many allegations made by Plaintiffs are referring to Solan's **own** conduct. Solan cannot "fail to intervene" in his own actions. Count V should be dismissed.

### 3.5 Plaintiffs' State Law Claims Are Barred for Failure to Comply with the Indiana Tort Claims Act (Counts VIII, X, XI, XII).

Plaintiffs' state law claims, negligent supervision (Count VII), malicious prosecution (Count X), and intentional and negligent infliction of emotional distress (Counts XI and XII),[5] against Solan in his individual capacity also fail because Plaintiffs failed to comply with the Indiana Tort Claims Act ("ITCA").

### 3.5.1 Plaintiffs' state law claims are barred because Plaintiffs allege Solan was acting within the scope of his employment.

Under the ITCA, Plaintiffs can bring state law claims against a government agency, not against Solan individually. The ITCA includes an absolute bar on suits against individual government employees when the suit alleges that the employee was acting within the scope of his employment. Ind. Code § 34-13-3-5(b); *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003) (holding that § 34-13-3-5(b) "should be interpreted as standing for the proposition that a plaintiff cannot sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of his employment")

Plaintiffs specifically allege that Solan was acting within the scope of his employment as a Hammond Police officer (Compl. ¶ 14) and thus they have removed Solan from

---

[5] Plaintiffs' Count IX "Respondeat Superior" is not directed at Solan.

any personal liability under their asserted state law claims. Plaintiffs have pled them-selves out of court on this claim.

### 3.5.2   Plaintiffs failed to file a mandatory tort claims notice.

Plaintiffs also failed to comply with the ITCA's prerequisite for bringing such claims. The ITCA has strict procedural requirements a party must follow before bring suit against a state actor. The statute "bars claims against political subdivisions unless the plaintiff notifies the governing body of the political subdivision along with the Indiana political subdivision risk management commission within 180 days after loss occurred." *Washington v. Schumann*, No. 2:09-CV-270-PRC, 2013 WL 5314610, at *5 (N.D. Ind. Sept. 19, 2013) (citation omitted); Ind. Code § 34-13-3-8(a).

It is Plaintiffs' burden to show compliance with the notice provisions. *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999). "A claimant's failure to provide proper notice required by the ITCA entitles a defendant to dismissal." *Gutierrez v. City of Indian-apolis*, No. 1:11-cv-0185-TWP-DML, 2012 WL 3308994, at *12 (S.D. Ind. Aug. 13, 2012).

Plaintiffs have failed to allege that they provided the requisite notice, thus they cannot meet their burden to show compliance with the ITCA notice provisions. The state law claims must be dismissed.

### 3.6   Plaintiffs' Remaining State Law Claims Also Fail on the Merits.

Even without the immunity afforded by the ITCA, Plaintiffs have not plead a state law claim that can stand on its own merits.

### 3.6.1   Solan is not an employer and cannot be liable for negligent super-vision.

24

Negligent supervision (Count VIII) imposes liability on an employer when an employee steps beyond the scope of his employment to commit a tort. *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009). Solan is not an "employer," and Plaintiffs make no factual allegations to the contrary.

### 3.6.2   Solan's alleged conduct was not extreme and outrageous.

Intentional infliction of emotional distress (Count XI) requires extreme and outrageous conduct that "exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind." *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). Plaintiffs' Complaint fails to meet this heightened standard. As the Court of Appeals stated, Solan's investigation was "exemplary police work." *Pinkins*, 799 N.E.2d at 1082. Exemplary police work cannot be outrageous conduct outside the bounds of what society will tolerate. Further, the factual allegations presented are not "outrageous in character" and do not "go beyond all possible bounds of decency."

### 3.6.3   Plaintiffs allege no impact to support negligent infliction of emotional distress.

Negligent infliction of emotional distress (Count XII) requires physical impact that causes a physical injury. *Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind. 1991). Plaintiffs make generic allegations with no factual support that they suffered physical harm (Compl. ¶ 217), but the Complaint does not allege any specific physical injury much less some physical injury caused by a physical impact. This count does not state a claim.

## 4.    CONCLUSION

Plaintiffs' claims should be dismissed.

Respectfully submitted,

*/s/ Jackie M. Bennett, Jr.*

Jackie M. Bennett, Jr., Atty. No. 4112-49
Peter S. French, Atty. No. 16716-49
Ann O'Connor McCready, Atty. No. 32836-53
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
P: 317-713-3500/ F: 317-713-3699
jbennett@taftlaw.com
pfrench@taftlaw.com
amccready@taftlaw.com

## CERTIFICATE OF SERVICE

I certify that on April 17, 2019, I caused the foregoing to be filed using the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jackie M. Bennett, Jr.*