**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| ROOSEVELT GLENN, SR. and DARRYL KEITH PINKINS, SR., | |
| Plaintiffs, | |
| v. | CAUSE NO.: 2:18-CV-150-TLS-JEM |
| CITY OF HAMMOND; Hammond Police Department Lieutenant MICHAEL SOLAN, in his individual capacity; Det. WENDY MCBRIDE, in her individual capacity; Officer MARK THARP, in his individual capacity; RAYMOND ROGALSKI, in his individual capacity; WILLIAM STEPHENS, in his individual capacity; KENNETH STUMP, in his individual capacity; LEO FINNERTY, in his individual capacity; Indiana State Police Lab Forensic Serologist DIANA PETERSON, in her individual capacity; STEVEN H. TOKARSKI, a Special Representative for the Estate of Kimberly Epperson; and SCOTT YAHNE, as Special Administrator for the Estate of Patricia Kasper, | |
| Defendants. | |

**OPINION AND ORDER**

This civil rights lawsuit arises out of the convictions of Plaintiffs Roosevelt Glenn, Sr. and Darryl Keith Pinkins, Sr. for their involvement in the kidnapping, robbery, and rape of M.W. by five men in 1989 and the successive state postconviction proceedings based on new DNA evidence that led the state court to vacate the conviction and dismiss the charges against Pinkins in 2016 and Glenn in 2017. The Plaintiffs allege that the Defendants violated their constitutional rights by fabricating inculpatory evidence and withholding exculpatory evidence during the investigation and trial.

Currently before the Court are (1) a Motion for Judicial Notice [ECF No. 66], filed by Defendants City of Hammond, Wendy McBride, Raymond Rogalski, William Stephens, Kenneth Stump, and Mark Tharp (collectively the "Hammond Defendants") and Defendant Leo Finnerty; (2) a Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 126], filed by Defendant Michael Solan; (3) a Motion to Dismiss [ECF No. 129], filed by the Hammond Defendants; (4) a Motion to Dismiss [ECF No. 131], filed by Finnerty; (5) a Motion to Dismiss [ECF No. 136], filed by Defendant Diana Peterson; (6) a Joint Motion for Summary Ruling [ECF No. 138], filed by the Hammond Defendants, Finnerty, Solan, and Peterson; and (7) a Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 157], filed by Defendant Scott E. Yahne as Special Administrator of the Estate of Patricia Kasper ("Kasper"). As set forth below, the Court dismisses certain claims, but the case otherwise proceeds against all the Defendants.

## PROCEDURAL BACKGROUND

On April 18, 2018, Plaintiffs Roosevelt Glenn, Sr. and Darryl Keith Pinkins, Sr. filed a Complaint [ECF No. 1] against the Hammond Defendants (City of Hammond, McBride, Rogalski, Stephens, Stump, and Tharp) and Defendants Solan, Kasper, Finnerty, Peterson, and Kimberly Epperson. Answers were filed by the Hammond Defendants, Solan, Finnerty, and Peterson. *See* ECF Nos. 34, 49, 50, 63.

The Hammond Defendants and Finnerty filed a Motion for Judicial Notice [ECF No. 66], which is fully briefed. Then, several Defendants filed Motions for Judgment on the Pleadings and/or Motions to Dismiss. *See* ECF Nos. 70, 72, 75. The Plaintiffs filed an omnibus response [ECF No. 88], and the moving Defendants filed replies [ECF Nos. 100, 101]. Subsequently, Defendant Peterson filed a Motion for Judgment on the Pleadings [ECF No. 105].

Magistrate Judge Martin granted the Plaintiffs' request to amend the complaint to substitute the estates of deceased defendants Epperson and Kasper and denied the Defendants' request that their dispositive motions remain pending against the Amended Complaint. *See* Dec. 10, 2019 Order, ECF No. 123.

On December 11, 2019, the Plaintiffs filed the Amended Complaint [ECF No. 124]. Counts I through VII are brought under 42 U.S.C. § 1983. Count I alleges violations of the Plaintiffs' Fourteenth Amendment right to a fair trial when the Defendants conducted a reckless investigation, deliberately withheld exculpatory evidence, and fabricated false reports, false testimony, and other evidence. Count II is a claim of malicious prosecution, alleging that the Defendants violated the Plaintiffs' constitutional right to be free from unlawful prosecution and continued detention without probable cause by falsifying evidence, fabricating evidence, and withholding exculpatory evidence. Count III is a claim of fabrication of false evidence in violation of the Fourth and Fourteenth Amendments, alleging that the Defendants knowingly fabricated false police reports, false forensic reports, and fabricated testimony offered at trial proceedings. Count IV, V, and VI are claims of supervisory liability, failure to intervene, and conspiracy to deprive the Plaintiffs of their constitutional rights. Count VII is a *Monell* claim against the City of Hammond. Counts VIII through XII are Indiana state law claims of negligent supervision, respondeat superior, malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress.

In response to the Amended Complaint, Solan filed an Answer [ECF No. 125], and the Hammond Defendants, Finnerty, Solan, and Peterson refiled their Motions to Dismiss and/or for Judgment on the Pleadings. *See* ECF Nos. 126, 129, 131, 136. Kasper also filed a Motion to Dismiss [ECF No. 157]. The Plaintiffs did not file a response to the renewed motions, which led

the Hammond Defendants, Finnerty, Solan, and Peterson to file the Joint Motion for Summary Ruling [ECF. No. 138]. Finding that the Plaintiffs' omnibus response to the original motions [ECF No. 88] is equally responsive to the refiled motions, the Court hereby denies the Joint Motion for Summary Ruling [ECF No. 138].

## FACTUAL BACKGROUND

### A.    The Investigation of the Attack on M.W.

These facts relevant to the instant motions are taken from the allegations of the Amended Complaint. In the early morning of December 7, 1989, M.W.'s car was hit from behind. Am. Compl. ¶ 23. When she exited her vehicle, a group of men stole her purse and forced her into their car. *Id.* at ¶ 24. Thereafter, five men drove with her in the vehicle for several hours, during which time they stole her gun and jewelry and repeatedly sexually assaulted her. *Id.* at ¶¶ 24, 25. According to M.W., all five men ejaculated and at least some, if not all, used M.W.'s jacket to wipe off their semen. *Id.* at ¶ 26. The men used a pair of coveralls to hide M.W.'s eyes during the assault, and M.W. still had those coveralls when the men released her. *Id.* at ¶ 27.

During the initial interview by the Hammond Defendant Officers,[1] M.W. described her assailants and their car. *Id.* at ¶¶ 28–31. Early in the investigation, Solan determined that the coveralls came from Luria Brothers and investigated five Luria Brothers employees, which included the Plaintiffs. *Id.* at ¶¶ 53–55. All five men were arrested by Solan on January 2, 1990. *Id.* at ¶ 56. All five men voluntarily gave blood, saliva, and head and pubic hair samples on the date of their arrest. *Id.* at ¶ 57.

After the arrest, Solan and other officers continued their investigation. *Id.* at ¶ 58. A vehicle of a fellow suspect was examined for fingerprints. *Id.* Blood and hair samples from the

---

[1] The Amended Complaint identifies the "Hammond Defendant Officers" as McBride, Rogalski, Stump, Tharp, Finnerty, Kasper, and Solan. Am. Compl. ¶ 17.

Plaintiffs were processed by the Indiana State Police Lab. *Id.* at ¶¶ 60–69. Peterson, an ISP serologist, examined a hair collected from M.W.'s sweater. *Id.* at ¶ 64. In a February 1990 written report, Peterson falsely reported that the hair recovered was "sufficiently similar to the head hair standards from R.T. Glenn to be of common origin." *Id.* at ¶ 65. Peterson's report was a fabrication as Peterson knew that the hairs did not share certain microscopic characteristics and that the comparison excluded Glenn from contributing the hair found at the scene. *Id*. at ¶ 67. Peterson "falsely reported to the Hammond Defendant Officers that the hairs were a match" and gave false testimony that the hair samples were a match. *Id.* at ¶ 67; *see also id.* at ¶ 68.

Semen stains on M.W.'s clothing were DNA tested. *Id.* at ¶ 72. In an August 1990 report, three individual DNA banding patterns were identified, one of which belonged to M.W. *Id.* The remaining two banding patterns did not match the Plaintiffs. *Id.* Solan notified M.W. that the two DNA banding patterns did not match the Plaintiffs. *Id.* at ¶ 74.

Solan initially asked M.W. to view a physical lineup or photographic array of the suspects, but M.W. refused because she did not believe she could identify anyone. *Id.* at ¶ 81. However, in January 1990, Solan took individual mugshots of the five men he had arrested, including the Plaintiffs, to M.W.'s home, setting them on the dining room table where M.W. and her husband were seated; when M.W. viewed the photographs, she made no identification. *Id.* at ¶ 82. Solan encouraged M.W. to make an identification and ultimately pressured and manipulated M.W. into identifying Pinkins as one of her attackers. *Id*. at ¶ 83. This information was withheld from the Plaintiffs. *Id*. At a May 1990 court proceeding, M.W. informed Solan and the prosecutor that Pinkins was the assailant who originally walked up to her vehicle. *Id.* at ¶ 84. Solan produced a written report of this identification but did not include the fact that he had spoken with M.W. prior to the hearing. *Id.* Before her January 1991 deposition, during a

conversation about Pinkins, Solan showed M.W. a single eight-and-a half by fourteen-inch photograph of Pinkins. *Id.* at ¶ 85. M.W. identified Pinkins as an attacker at trial. *Id.* at ¶ 86.

During the investigation, Solan procured false statements from a fellow jail inmate of each Plaintiff, fabricating a statement from each of the informants and promising them consideration in exchange for agreeing to provide a fabricated statement. *Id.* at ¶¶ 87–97. Both informants gave this fabricated testimony at trial. *Id.* at ¶¶ 93, 97.

In 1997, the Hammond Police Department recovered the gun that was stolen from M.W. during the attack. *Id.* at ¶ 98. In 2002, Solan interviewed the juvenile from whom the gun was recovered; the juvenile stated that he had obtained the gun from someone called "Cheese;" Solan knew that "Cheese" was not either of the Plaintiffs and had no connection to either Plaintiff. *Id.* at ¶¶ 99, 100. Solan did not disclose this evidence to the prosecutor or the Plaintiffs and has maintained the gun in his own home until the present, never producing the gun to the Plaintiffs or the Hammond Police Department. *Id.* at ¶¶ 101–02.

## B.    Prior Litigation of Glenn's Claims[2]

The Lake County, Indiana, Superior Court held a hearing on January 2, 1990, and found that probable cause existed to arrest the five men; Glenn was arrested that day. Am. Compl. ¶ 56; Ex. A, p. 29, ECF No. 66-1. On January 8, 1990, Glenn was charged with rape, criminal deviate conduct, and robbery. Ex. B, ECF No. 66-2. On April 22, 1993, a jury found Glenn guilty of rape, and Glenn was sentenced to thirty-six years imprisonment. Ex. C, ECF No. 66-3. On August 29, 1995, the Indiana Court of Appeals affirmed the verdict. Ex. D, ECF No. 66-4.

---

[2] The procedural history of the prior related proceedings is taken from the documents submitted by the Defendants with the Motion for Judicial Notice [ECF No. 66], which the Court hereby grants. "[I]t is well-settled that we may judicially notice court records as evidence of prior judicial actions." *United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020) (citing *United States v. Huntsberry*, 956 F.3d 270, 285 (5th Cir. 2020)). Accordingly, the Court takes judicial notice of Exhibits A through Z [ECF Nos. 66-1 through 66-26]. Any arguments regarding the legal effect of those exhibits will be addressed as they arise.

On November 14, 2003, Glenn filed a petition for postconviction relief, Ex. E, ECF No. 66-5; the state court denied the petition on June 23, 2008, Ex. F, ECF No. 66-6. Glenn appealed, and the Court of Appeals affirmed the denial of Glenn's petition. *Glenn v. State (Glenn II)*, 905 N.E.2d 533 (Table), No. 45A05-05-0808-PC-462, 2009 WL 1099255 (Ind. Ct. App. Apr. 22, 2009). The Indiana Supreme Court denied transfer. *Glenn v. State*, 919 N.E.2d 554 (Table) (Ind. 2009).

Glenn then filed a petition for writ of habeas corpus on September 9, 2010. Ex. G, ECF No. 66-7. On August 3, 2011, this Court dismissed Glenn's petition with prejudice as untimely. *Glenn v. Salinas (Glenn III)*, No. 2:10-CV-351, 2011 WL 3348098, at *1, 5–6 (N.D. Ind. Aug. 3, 2011). On September 2, 2011, Glenn filed a notice of appeal and application for certificate of appealability to the Seventh Circuit, which was denied. Exs. H, I, ECF Nos. 66-8, 66-9.

On May 5, 2016, Glenn filed for permission "to pursue a successor post-conviction legal claim of newly discovered evidence under Indiana common law and I.C. 35-38-7 et seq. based on TrueAllele Casework System DNA genotyping results." Ex. J, ECF No. 66-10. The Court of Appeals granted leave, and Glenn filed his petition in the Lake Superior Court. Exs. K, L, ECF Nos. 66-11, 66-12. The State filed a motion requesting that the court grant the successive petition on the basis that the new DNA evidence entitled Glenn to a new trial, even though, from the State's analysis, Glenn could not be exonerated by the DNA evidence; the State informed the court that it was unable to retry Glenn due to the passage of time. Ex. M, ECF No. 66-13. On January 30, 2017, the Lake Superior Court granted the petition and dismissed the criminal charges against Glenn. Ex. N, ECF No. 66-14; Am. Compl. ¶ 116.

### C.       Prior Litigation of Pinkins' Claims

Following the January 2, 1990 hearing and judicial finding of probable cause, Pinkins

was arrested that same day. Am. Compl. ¶ 56; Ex. A. On January 8, 1990, Pinkins was charged

with rape, criminal deviate conduct, and robbery. Ex. B. A jury found Pinkins guilty on all three

charges, and he was sentenced to sixty-five years imprisonment. Exs. O, P, ECF Nos. 66-15, 66-

16. The Indiana Court of Appeals granted Pinkins leave to proceed with postconviction relief in

lieu of a direct appeal, Pinkins filed his petition, and the trial court denied Pinkins' petition. Exs.

Q–T, ECF Nos. 66-17 through 66-20. Pinkins appealed. Ex. U, ECF No. 66-21. The Indiana

Court of Appeals consolidated the appeals from Pinkins' criminal trial and post-conviction

proceedings, affirming both judgments. *Pinkins v. State*, 799 N.E.2d 1079, 1082 (Ind. Ct. App.

2003). The Indiana Supreme Court denied transfer. *Pinkins v. State*, 812 N.E.2d 797 (Table)

(Ind. 2004).

Pinkins then filed a petition for writ of habeas corpus. Ex. V, ECF No. 22. This Court

denied the petition, the Seventh Circuit affirmed, and Supreme Court denied *certiorari*. *See*

*Pinkins v. Davis*, No. 3:05-CV-134, 2005 WL 2128193 (N.D. Ind. Aug. 30, 2005); *Pinkins v.*

*Buss*, 215 F. App'x 535 (7th Cir. 2007); *Pinkins v. Buss*, 552 U.S. 892 (2007).

Pinkins filed a petition for successive post-conviction relief with the Indiana Court of

Appeals, which was granted on June 1, 2015. Ex. W, ECF No. 66-23. Pinkins filed his Verified

Successive Petition for Post-Conviction Relief in Lake Superior Court on June 10, 2015. Ex. X,

ECF No. 66-24. The State filed a motion requesting that the court grant the petition on the basis

that the new DNA evidence entitled Pinkins to a new trial, even though M.W. had identified

Pinkins at trial as one of her attackers; the State also informed the court that it was unable to

retry Pinkins due to the passage of time. Ex. Z, ECF No. 66-26. On April 22, 2016, the Lake

Superior Court granted the petition and dismissed the criminal charges against Pinkins. *Id.*; Am. Compl. ¶ 115.

## LEGAL STANDARDS

A party may bring a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009); Fed. R. Civ. P. 12(b)(1). In considering such a motion, the "district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). In addition, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (quoting *Long*, 182 F.3d at 554). The burden of proof to demonstrate subject matter jurisdiction is on the party asserting jurisdiction. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

A motion to dismiss brought under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). The Court presumes that all well-pleaded allegations are true, views these well-pleaded allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in favor of the plaintiff. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). Surviving a Rule 12(b)(6) motion "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A motion for judgment on the pleadings is governed by the same standard for reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Buchannan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

**MOTIONS TO DISMISS**

The Defendants' arguments for dismissal include lack of subject matter jurisdiction; a bar under *Heck v. Humphrey*; claim and issue preclusion; failure to state a claim under § 1983 for *Brady* violations, malicious prosecution, conspiracy, and failure to intervene; immunity under the Indiana Tort Claims Act ("ITCA"); and failure to comply with the ITCA notice provisions. Although the Defendants filed separate motions, several of the motions cross-reference the others' briefs. In the interests of efficiency, the Court addresses the substantive arguments in turn, identifying where appropriate the Defendants making the argument.

**A.    Subject Matter Jurisdiction**

All movants seek dismissal of the Amended Complaint under Rule 12(b)(1), arguing that the Court lacks subject matter jurisdiction over this case because the Plaintiffs' alleged civil rights violations have already been decided against them by the Indiana Court of Appeals. The Defendants cite the doctrines of standing and mootness and also appear to invoke the *Rooker-Feldman* doctrine.

*1.    Standing and Mootness*

Although the Defendants cite the legal standards for standing and mootness, they do not apply either standard to the facts of this case. *See* Hammond Defs.' Br. §§ II.A, III.A, ECF No. 130. Rather, they argue that the Plaintiffs already raised the allegations underlying their civil

10

rights claims in their criminal appeals, state postconviction relief actions, and/or federal habeas cases and that the issues were previously decided. *See id.* at 2, 11, § III.A. This argument goes to issue preclusion (collateral estoppel) rather than subject matter jurisdiction. *See Our Country Home Enters., Inc. v. Comm'r*, 855 F.3d 773, 783 (7th Cir. 2017) ("[U]nlike mootness, an Article III jurisdictional bar, [issue preclusion] is an affirmative defense . . . . When [an issue preclusion] defense defeats a claim, it does so on the merits, not by displacing jurisdiction." (citation omitted)); *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 535 n.4 (7th Cir. 2004) (explaining that the court may not consider preclusion, which goes to the merits, when the court lacks the subject matter jurisdiction to do so). Issue preclusion is addressed below in Part C.2. Nevertheless, because the Court must police its subject matter jurisdiction, the Court briefly addresses the standing and mootness doctrines as applied to this case.

Standing is a jurisdictional requirement; without standing, a plaintiff's claim cannot proceed. *See Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019). The elements of standing are "an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560). Here, the Plaintiffs were injured by the Defendants' alleged violations of their constitutional rights that resulted in their prosecutions, convictions, and imprisonments. The Plaintiffs' injuries are redressable by a favorable judicial decision in the form of monetary damages under § 1983 and state law. The Plaintiffs have standing to bring their claims.

11

"As a general rule, cases or individual claims for relief become moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 860 (7th Cir. 2018) (internal quotation marks omitted) (quoting *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000)). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)); *see also Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921, 929 (7th Cir. 2013). Here, the Plaintiffs' claims for monetary damages for the injuries from the alleged constitutional violations have not been previously considered by any court and remain a "live" controversy. The Plaintiffs retain a legally cognizable interest in the outcome because the Plaintiffs could be awarded damages if they are successful on their claims. Thus, mootness is not a jurisdictional bar in this case.

*2.*     Rooker-Feldman *Doctrine*

The Defendants next assert that federal district courts do not have subject matter jurisdiction to conduct parallel or appellate review of state court rulings. *See* Hammond Defs.' Br. 2; Solan's Br. 1, ECF No. 127. This is an invocation of the *Rooker-Feldman* doctrine, which deprives a federal district court of subject matter jurisdiction if the federal court complaint seeks review of a state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005); *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002). "Generally speaking, if the complaint attacks the state court judgment, then *Rooker-Feldman* bars subject matter jurisdiction, but if the plaintiff attempts to relitigate the case and thus bypass the state court judgment, the federal court has subject matter jurisdiction, but [claim preclusion] bars the suit."

*Brokaw*, 305 F.3d at 664 n.4. Issue preclusion is also distinct from the *Rooker-Feldman* doctrine. *See id.* Here, the Amended Complaint does not ask this Court to review or overturn any state court decisions but rather to award damages based on the Plaintiffs' claims of constitutional and state law violations. The *Rooker-Feldman* doctrine is not in play, and the Court considers the Defendants' arguments as a question of claim and issue preclusion below.

**B.      *Heck v. Humphrey***

In *Heck v. Humphrey*, the Supreme Court held that a person who has been convicted of a crime cannot seek damages under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. 477, 487 (1994). Therefore,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, *declared invalid by a state tribunal authorized to make such determination*, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486–87 (emphasis added). The Hammond Defendants, Finnerty, and Kasper argue that the Plaintiffs' § 1983 civil rights claims are barred under *Heck*. However, the doctrine is inapplicable because the Plaintiffs satisfy *Heck*'s favorable termination requirement. The Plaintiffs' criminal convictions were vacated by the state court orders that granted their successive postconviction motions and dismissed the charges against them. *See* Am. Compl. ¶¶ 114–16; Exs. N, Z.

The Defendants argue, without citation to law, that the *Heck* requirement is not satisfied because the dismissal orders were based not on the Plaintiffs' innocence but rather on the state's inability to retry the Plaintiffs due to the passage of time. After the briefing on the motions in this case was complete, the Seventh Circuit held that an affirmative finding of innocence is not

required to satisfy *Heck*'s favorable termination requirement. *See Savory v. Cannon*, 947 F.3d 409, 428–29 (7th Cir. 2020) (holding that the plaintiff's general pardon, as opposed to a pardon based on innocence, served as a favorable termination for purposes of *Heck*, reasoning that the "contention that a pardon must be based on innocence in order to serve as a favorable termination finds no support in *Heck*, and we see no reason to impose that additional limitation on *Heck*'s holding" and that "the [Supreme] Court offered a list of possible resolutions that would satisfy the favorable termination requirement, and none require an affirmative finding of innocence"). Thus, *Heck* is not a bar to the Plaintiffs' § 1983 claims for monetary damages.

**C.      Claim Preclusion and Issue Preclusion (Res Judicata and Collateral Estoppel)**

All the movants argue that claim and issue preclusion bar the Plaintiffs' civil rights claims. They contend that the Plaintiffs are barred from litigating issues that they had the opportunity, but failed, to raise in the prior criminal, postconviction relief, and/or habeas proceedings. They also contend that the Plaintiffs are barred from relitigating certain legal and factual issues already raised and ruled on in those prior proceedings.

The "usual rules of preclusion apply in section 1983 actions." *Savory*, 947 F.3d at 418 (citing *Allen v. McCurry*, 449 U.S. 90, 103–05 (1980)); *see also* 28 U.S.C. § 1738 ("The records and judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."). The Court looks to Indiana state law for the preclusive effect of the prior state criminal and postconviction relief decisions and to federal law for the preclusive effect of the prior federal § 2254 habeas rulings. *See Allen*, 449 U.S. at 96 ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . .

14

."); *Daza v. State*, 2 F.4th 681, 683 (7th Cir. 2021) ("Federal courts apply the federal common

law of claim preclusion when the earlier decision was rendered by a federal court." (citing *Taylor*

*v. Sturgell*, 553 U.S. 880, 891 (2008))); *Savory*, 947 F.3d at 418–19 ("Federal courts apply the

preclusion law of the state where the judgment was rendered, so long as the state in question

satisfies the applicable requirements of the Due Process Clause." (citing *Kremer v. Chem.*

*Constr. Corp.*, 456 U.S. 461, 481–82 (1982))). Both federal and Indiana state law recognize the

separate doctrines of claim preclusion and issue preclusion. *See Adair v. Sherman*, 230 F.3d 890,

893, 893 n.2 (7th Cir. 2000) (federal) (citing *Montana v. United States*, 440 U.S. 147, 153

(1979)); *Starzenski v. City of Elkhart*, 87 F.3d 872, 877 (7th Cir. 1996) (Indiana); *Angelopoulos*

*v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013) (Indiana). The Court considers each

doctrine in turn.

*1.    Claim Preclusion (Res Judicata)*

Federal claim preclusion has three elements: "(1) identity of parties, (2) identity of

claims, and (3) a prior final judgment on the merits." *Daza*, 2 F.4th at 683. Under Indiana law,

the elements of claim preclusion are:

> (1) the former judgment must have been rendered by a court of competent
> jurisdiction; (2) the former judgment must have been rendered on the merits;
> (3) the matter now in issue was, or could have been, determined in the prior
> action; and (4) the controversy adjudicated in the former action must have been
> between the parties to the present suit or their privies.

*Angelopoulos*, 2 N.E.3d at 696 (citing *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703

(Ind. Ct. App. 2005)).

The Defendants argue that the Plaintiffs had an opportunity to raise issues or claims

related to the alleged civil rights violations in the prior criminal, post-conviction, or habeas

proceedings but did not and, therefore, the Plaintiffs are barred from raising the issues or claims

here. *See, e.g.*, Hammond Defs.' Br. 2, 11, 21; Solan's Br. 10; Peterson's Br. 9, ECF No. 137. However, to invoke the bar of claim preclusion, the two actions must be between the same parties. This element is not satisfied because the other party was the State of Indiana in the Plaintiffs' criminal and postconviction proceedings and was the prison warden in the federal habeas actions. The Hammond Defendants, Finnerty, Kasper, Solan, and Peterson were not parties to those prior lawsuits. In addition, as set forth below, there is no final judgment with preclusive effect because the Plaintiffs' convictions were vacated. Thus, claim preclusion is inapplicable, and the Court denies the motions to dismiss brought on this basis.[3]

2. *Issue Preclusion (Collateral Estoppel)*

The primary argument by all movants is that issue preclusion bars relitigation of certain facts and issues that were already decided in the prior proceedings. The Plaintiffs respond that, because their convictions were vacated, there are no final judgments on which to base issue preclusion and that they have alleged new information that was not known at the time of the earlier proceedings such that the Plaintiffs did not have a full and fair opportunity to litigate the issues. The Court finds that the moving Defendants have not met their burden of establishing that the elements of issue preclusion are met.

Under federal law, issue preclusion requires that "(1) the issue sought to be precluded [was] the same as that involved in the prior litigation, (2) the issue [was] actually litigated, (3) the determination of the issue [was] essential to the final judgment, and (4) the party against whom estoppel is invoked [was] fully represented in the prior action." *Oneida Nation v. Village*

---

[3] In a similar vein, the Defendants assert waiver by the Plaintiffs of any objections regarding the investigation that could have been raised in their criminal trials and direct criminal appeals but were not. However, the cited cases address waiver in the direct criminal appeal or in state postconviction relief proceedings; the cases do not address a subsequent civil complaint under § 1983. *See* Hammond Defs.' Br. 2, 11, 21 (citing, e.g., *Williams v. State*, 808 N.E.2d 652, 659 (Ind. 2004); *Shoulders v. State*, 578 N.E.2d 693, 695–97 (Ind. Ct. App. 1991)); Solan's Br. 11; Peterson's Br. 9; Hammond Defs. Reply 5, 6.

*of Hobart*, 968 F.3d 664, 686 (7th Cir. 2020) (quoting *In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019)) (alterations in original).

Under Indiana law, "[i]ssue preclusion, or collateral estoppel, bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent suit." *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012) (citing *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 167 (Ind. 1996)). Thus, Indiana issue preclusion requires three elements: "(1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action." *Id.* (citing *Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ind. Ct. App. 2000)). For defensive issue preclusion, which is asserted in this case, "two additional considerations are relevant . . . : 'whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of [issue preclusion].'" *Id.* (quoting *Small*, 731 N.E.2d at 28). The party invoking preclusion bears the burden of establishing that all the elements are met. *See In re Calvert*, 913 F.3d at 702; *Perez-Grahovac v. State*, 894 N.E.2d 578, 584 (Ind. Ct. App. 2008).

First, the requirement of a final judgment in the criminal proceedings cannot be met because the Plaintiffs' criminal convictions were vacated. Under Indiana law, a judgment that is vacated has no preclusive effect. *See Huffman v. State*, 717 N.E.2d 571, 575 (Ind. 1999) (holding that there was no final judgment on the issue of mitigation when the original criminal trial court judgment and sentence were reversed upon the defendant's post-conviction petition and proceedings); *Starzenski*, 87 F.3d at 878 ("It is true that 'a judgment which has been reversed on its merits cannot have any claim precluding effect [in subsequent cases].'" (quoting *Koors v.*

*Great Sw. Fire Ins. Co.*, 538 N.E.2d 259, 261 (Ind. Ct. App. 1989))); *Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850, 854 (7th Cir. 1974) (holding, in a case brought under Indiana law, that the facts underlying a vacated judgment are "a nullity"). As a result, the underlying criminal proceedings have no preclusive effect.

This leaves the question of the preclusive effect of the decisions in the state and federal collateral proceedings, including the appeals in each, that were issued *before* the Plaintiffs' convictions were vacated. Neither party cites any law on this specific issue, and the Court has found no Indiana state law opinions or opinions in this circuit on point. Federal district courts in other circuits have declined to give preclusive effect to collateral proceedings that were based on subsequently vacated criminal convictions. *See, e.g.*, *Dukes v. City of Albany*, 289 F. Supp. 3d 387, 393 (N.D.N.Y. 2018) (New York state law) ("[A] vacated criminal conviction cannot have preclusive effect. Furthermore, the judgment of any court tasked with a review of that now-vacated criminal conviction likewise has no preclusive effect." (internal citations omitted) (citing *Kogut v. County of Nassau*, No. 06-CV-6695, 2009 WL 5033937, at *9–10 (E.D.N.Y. Dec. 11, 2009))); *Chandler v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:10-CV-470, 2011 WL 781183, at *2 (W.D. Ky. Mar. 1, 2011) (federal law) ("Considering the nature of habeas proceedings, particularly the deference given to state court findings of fact and law, this Court is unconvinced that a federal court's habeas rulings based upon discredited and vacated state proceedings are worthy of preclusive effect.");[4] *Tankleff v. County of Suffolk*, No. 09-CV-1207, 2010 WL 5341929, at *4–5 (E.D.N.Y. Dec. 21, 2010) (New York state law) (finding that the

---

[4] The court in *Chandler* described the collateral review of the criminal proceedings as the judges having "reviewed the state court findings and ruling which are now literally banished to judicial netherland." 2011 WL 781183, at *2.

claims raised in the direct appeal of conviction and in the federal habeas proceedings had no preclusive effect because the criminal conviction had been vacated).

Based on its review of Indiana and federal preclusion law, the Court agrees with the reasoning of those fellow district courts and finds that the state postconviction review and federal habeas proceedings based on the Plaintiffs' now-vacated criminal convictions have no preclusive effect in this § 1983 civil rights case. The Court recognizes that, under Indiana law, a judgment entered following a postconviction relief proceeding is a "final judgment," *see* Ind. R. Post-Conviction Remedies, Rule PC 1, § 6, and that the judgments in the Plaintiffs' state and federal collateral proceedings have not been directly reversed. However, the decisions in the collateral proceedings were necessarily based on the factual and legal decisions in the criminal cases being collaterally challenged. And the judgments in those criminal cases were subsequently vacated based on newly discovered evidence. In its motions asking the state court to grant the Plaintiffs' successive petitions for postconviction relief, the State conceded that the newly discovered evidence entitled each of the Plaintiffs to have his judgment of conviction and sentence set aside. *See* Exs. M, N, Z. The State explained that "the new DNA analysis undermines the State's theory of the case put forth at the petitioner's trial." Ex. M ¶ 8. Because there are no final judgments, the Defendants cannot meet their burden of establishing this element of issue preclusion.

Second, the Defendants cannot satisfy the requirement that the Plaintiffs had a full and fair opportunity to litigate the issues in the prior proceedings. In the Amended Complaint, the Plaintiffs allege that the Defendants withheld exculpatory evidence; the prior courts could not have decided issues related to evidence that was never disclosed. At this stage of the litigation, the Court must take the factual allegations of the Amended Complaint as true and view them in the light most favorable to the Plaintiffs. Thus, even if there were valid prior judgments with

preclusive effect, issue preclusion would not bar the Plaintiffs' claims because the prior courts did not have all of the evidence relevant to the instant claims. The Court briefly addresses each of the issues raised by the Defendants.

The Defendants first assert issue preclusion against the Plaintiffs' allegation that the Defendants withheld information regarding improprieties during photographic identification procedures, namely the allegations that Solan took individual mugshots of the five suspects to M.W.'s home shortly after the attack in January 1990, manipulated M.W. into identifying Pinkins as one of her attackers, and subsequently engaged in "unduly suggestive photo array procedures" by speaking to M.W. before her in-court identification of Pinkins and by showing her a photo of Pinkins before her January 1991 deposition. Am. Compl. ¶¶ 80–86. The Hammond Defendants and Solan argue that this issue of withholding *Brady* materials was already rejected by the Indiana Court of Appeals in Pinkins' consolidated appeal and by the Seventh Circuit. *See* Hammond Defs.' Br. 12–16; Solan's Br. 12–13.

In his postconviction proceedings, Pinkins claimed that his counsel was ineffective for failing to object to M.W.'s pretrial and in-court identification of him as one of her assailants. *See Pinkins*, 799 N.E.2d at 1082, 1093–94. The Indiana Court of Appeals held that showing M.W. the photo of Pinkins before her deposition in January 1991 was not unduly suggestive because M.W. had voluntarily identified Pinkins as one of the attackers eight months earlier at a pretrial proceeding in May 1990. *Id.* at 1094. In addition, the court found that the Plaintiff had an independent basis for her in-court identification of Pinkins at trial based on the events during the attack and her independent in-court identification of him in May 1990. *Id*. at 1094–95. As for the January 1990 photo array in M.W.'s home, which is the basis of the Plaintiffs' *Brady* claim on this issue in this case, the court noted in the factual background only that M.W. testified that she

refused to look at the five photographs offered by Solan and "pushed the stack away from her." *Id.* at 1085.

On appeal in the federal habeas proceedings, Pinkins argued that the state appellate court had failed to consider "evidence that shortly after the attack, but before the pretrial hearing, M.W. had been asked to view photographs of the suspects," but the Seventh Circuit rejected the argument on the same basis that "M.W. refused to look at the photographs, rendering them wholly irrelevant to her later in-court identification." *Pinkins*, 215 F. App'x at 542.[5]

However, the Amended Complaint contains the new allegations that contradict that testimony, namely that Solan took mugshots of the five men to M.W.'s home, M.W. viewed the photographs, M.W. made no identification, Solan "ultimately pressured and manipulated M.W. into identifying Mr. Pinkins as one of her attackers," and this exculpatory information was withheld from the Plaintiffs. Am. Compl. ¶¶ 81–83. Because this new information was not before the prior courts, the Plaintiffs did not have a full and fair opportunity to litigate the issue.

Next, the Defendants assert issue preclusion as to the Plaintiffs' allegation that the Hammond Defendants and Solan fabricated false testimony from jailhouse informants and promised the informants consideration in exchange for the fabricated statements. *See* Am. Compl. at ¶¶ 87–97. The Hammond Defendants argue that this issue of false testimony was already rejected by the Indiana Court of Appeals on Glenn's criminal appeal and his petition for postconviction relief. *See* Hammond Defs.' Br. 16–18. This is not the case. In the direct appeal, the court simply recited the substance of the jailhouse informant's testimony as one fact in

---

[5] Solan also cites this Court's 2005 decision on Pinkins' habeas petition. However, this Court's 3-page opinion, which found Pinkins' claim of ineffective assistance of trial counsel to be "without merit," did not identify the bases for the claim, decide any specific issues, or discuss any aspect of M.W.'s identification of Pinkins. *See Pinkins v. Davis*, 3:05-CV-134, 2005 WL 2128193, at *1 (N.D. Ind. Aug. 30, 2005).

support of its broader finding that the evidence was sufficient to support the conviction. *See* Ex.

D, p. 6; *Glenn* II, 2009 WL 1099255, at \*2 (quoting that recitation of the jailhouse informant's

testimony from the opinion on direct appeal). There is no discussion of whether that testimony

was fabricated and no holding on the issue. In Glenn's postconviction relief appeal, the court

found that "[t]he record indicates that the jury was fully apprised of the inconsistencies in the

informants' testimony and of their potential motives for testifying against Glenn," and the court

declined to invade the unique province of the jury to weigh trial testimony and assess witness

testimony. *Glenn II*, 2009 WL 1099255, at \*12.[6] However, there is no reference in the opinion to

the alleged withheld information that the jailhouse informants were offered consideration to give

testimony fabricated by the Defendants, and the Defendants do not contend that the jury or those

courts considered this new information. Therefore, the Plaintiffs did not have a full and fair

opportunity to raise the issue of the fabricated jailhouse informant testimony.

Solan also contends that issue preclusion bars the Plaintiffs from arguing that he withheld

exculpatory evidence related to the recovery of the gun that was stolen from M.W. because

Pinkins acknowledged in his 2005 habeas petition that on May 5, 2002, the State filed a notice

stating that the victim's gun was recovered from a minor. *See* Solan's Br. 15–16 (citing Ex. V, p.

19, ECF No. 66–23); Am. Compl. ¶¶ 98–102. However, there was no ruling on the gun in

Pinkins' habeas proceedings on which issue preclusion could be based. *See Pinkins*, 2005 WL

2128193; *Pinkins*, 215 F. App'x 537; *see also Bobby v. Bies*, 556 U.S. 825, 834 (2009) ("If a

judgment does not depend on a given determination, relitigation of that determination is not

---

[6] Solan recognizes that, although Glenn's habeas petition mentioned the unreliability of the jailhouse informant testimony, this Court, in dismissing the petition as untimely, did not address the issue. *See* Solan's Br. 14; Ex. G, pp. 52, 53; *Glenn III*, 2011 WL 3348098.

precluded." (citing Restatement (Second) of Judgments § 27, comment h (1980))). Thus, Solan is simply asserting a factual dispute that cannot be resolved on a motion to dismiss.

Finally, Defendant Peterson argues that the Plaintiffs are barred from relitigating her forensic hair analysis under the doctrine of issue preclusion; however, once again, the issues present in the instant litigation were not decided by the prior courts. In the Amended Complaint, the Plaintiffs allege that Peterson fabricated her findings that the hair recovered from M.W.'s sweater was sufficiently similar to be of common origin and/or matched a hair from Mr. Glenn, that she falsely reported that the hairs were a match to the Hammond Defendant Officers, and that she testified based on the false and fabricated report. Am. Compl. ¶¶ 67, 68. Peterson argues that Glenn already challenged Peterson's testimony as false and/or misleading and as violating his rights and that both the Indiana Court of Appeals in the postconviction relief proceeding and this Court in the § 2254 habeas proceeding decided the issue. However, while both courts discussed Peterson's trial testimony about the hair in relation to DNA evidence, neither court decided the issue of whether Peterson's report and findings were fabricated.

In the state postconviction proceedings, Glenn claimed that he was entitled to a new trial based on newly discovered hair DNA evidence showing that the hair did not come from him. *See Glenn II*, 2009 WL 1099255, at *1, 3 (¶ 11), 7–8. In addressing the claim, the Indiana Court of Appeals noted that, in her trial testimony, Peterson "did not state definitively that the hair in question came from Glenn;" the court used this testimony to support its finding that "the fact that the hair did not come from Glenn is not as significant as Glenn would have us believe." *Id*. at *8. Ultimately, the court held that the new hair DNA evidence would probably not produce a different result on retrial. *Id.* at *13. The court did not consider whether Peterson fabricated the hair findings.

23

As for Glenn's federal habeas petition, Glenn claimed that "Peterson's [hair] analysis was faulty and misleading," *Glenn III*, 2011 WL 3348098, at *4. However, as noted above, this Court dismissed the petition as untimely and, thus, did not reach the merits of the petition. *See id.* at *1. The Court's discussion of Peterson's trial testimony was solely in the context of determining that, "[a]lthough Glenn's claim relates to hair evidence, it is apparent that the claim is based on the evidence presented and available at the time of trial, not on the results of the DNA test performed nearly a decade after the trial was over." *Id.* at *4. The Court did not consider the merits of Glenn's claim that Peterson's analysis was faulty and misleading.

Finally, Peterson also contends that the Amended Complaint mischaracterizes her trial testimony. Peterson's Br. 10. That is a factual dispute that is not properly resolved on this motion to dismiss.

Accordingly, the Court denies the motions to dismiss based on issue preclusion.

## D.     Failure to State a Claim—§ 1983 claims

The Hammond Defendants, Finnerty, and Kasper argue that the Plaintiffs have failed to state a claim of *Brady* violations, and Solan asserts a failure to state § 1983 claims of malicious prosecution, conspiracy, and failure to intervene.

### 1.     *Brady Violations—Hammond Defendants*

In *Brady v. Maryland*, the Supreme Court recognized the due process right of criminal defendants to receive exculpatory evidence. 373 U.S. 83, 87 (1963). "To prevail on a *Brady* claim for an officer's failure to disclose evidence, a plaintiff must show that (1) the evidence was favorable to him; (2) the officer concealed the evidence; and (3) the concealment prejudiced him." *Gill v. City of Milwaukee*, 850 F.3d 335, 343 (7th Cir. 2017) (citing *Cairel v. Alderden*, 821 F.3d 823, 832 (7th Cir. 2016)). "Usually, a police officer's *Brady* obligations are discharged

by disclosing material exculpatory evidence to the prosecutor, for it is the prosecutor's responsibility to turn the evidence over to defense counsel." *Beaman v. Freesmeyer*, 776 F.3d 500, 512 (7th Cir. 2015) (citing *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008)).

The Hammond Defendants contend that the Plaintiffs fail to state a claim of any *Brady* violations because all the alleged conduct was known to the Plaintiffs and their defense counsel or, at a minimum, was known to the prosecution in both criminal cases. However, for each of the alleged *Brady* violations, the Amended Complaint alleges that the exculpatory information was withheld from the Plaintiffs; and, there are no allegations in the Amended Complaint that the prosecution knew the information. At this stage of the litigation, the Court must take those allegations as true. Although the Hammond Defendants set out the legal standard for a *Brady* claim, they do not engage with the allegations of the Amended Complaint, identify what specific information was already known by the Plaintiffs or their attorneys, or identify what information was "available for the asking." Hammond Defs.' Br. at 20 (quoting *United States v. Johnson*, 911 F.3d 849, 851–52 (7th Cir. 2018)); *see also id.* § III.B. The Court denies the Hammond Defendants' motion to dismiss the *Brady* claims.

2.    *Malicious Prosecution—Solan*

Solan moves for dismissal of the § 1983 malicious prosecution claim against him. A claim of malicious prosecution is not actionable under § 1983 if there is an adequate state law remedy. *Howlett v. Hack*, 794 F.3d 721, 727 (7th Cir. 2015) (quoting *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001)). Although Indiana state law recognizes the tort of malicious prosecution, government employees are shielded from these claims by the ITCA. *Id.* (citing Ind. Code § 34-13-3-3(6); *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013)). As a result, the Seventh Circuit has recognized "that Indiana state law does *not* provide an adequate remedy for

malicious prosecution," and a malicious prosecution claim can be brought against police officers under § 1983 for the violation of a particular constitutional right. *Serino*, 735 F.3d at 593 (citing *Julian v. Hanna*, 732 F.3d 842, 847–48 (7th Cir. 2013)); *see also Howlett*, 794 F.3d at 727.

Nevertheless, "there is no such thing as a constitutional right not to be prosecuted without probable cause." *Young v. City of Chicago*, 987 F.3d 641, 646 (7th Cir. 2021) (citing *Manuel v. City of Joliet (Manuel II)*, 903 F.3d 667, 670 (7th Cir. 2018)). Thus, the Seventh Circuit has explained that a plaintiff must "alleg[e] a violation of a particular constitutional right, such as the right to be free from unlawful seizures under the Fourth Amendment, or the right to a fair trial under the Due Process Clause." *Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014) (quoting *Serino*, 735 F.3d at 592). However, after *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ("*Manuel I*"), the Seventh Circuit clarified that a "Fourth Amendment malicious prosecution" claim does not exist. *See Manuel II*, 903 F.3d at 670 ("After [*Manuel I*], 'Fourth Amendment malicious prosecution' is the wrong characterization. There is only a Fourth Amendment claim—the absence of probable cause that would justify the detention."); *see also Stone v. Wright*, 734 F. App'x 989, 989 (7th Cir. 2018) ("[*Manuel II*] says that there is no such thing as 'Fourth Amendment malicious prosecution.' Wrongful arrest or detention creates a wrongful-seizure claim, plain and simple . . . .").

Here, the Plaintiffs' Amended Complaint alleges that the Defendants "deprived [the Plaintiffs] of their constitutional right to be free from unlawful prosecution and continued detention without probable cause." Am. Compl. ¶ 155. Because there is no "federal right not to be summoned into court and prosecuted without probable cause," the Plaintiffs must allege the deprivation of a specific constitutional right. *See Welton*, 770 F.3d at 673. To the extent the Plaintiffs are alleging that Solan fabricated evidence that led to their continued pretrial detention,

26

the Seventh Circuit has held that "all § 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment." *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) (citing *Manuel II*, 903 F.3d at 669); *see also Young*, 987 F.3d at 646. Under *Manuel II*, there is no Fourth Amendment malicious prosecution claim. However, the Plaintiffs have also alleged that they were denied the constitutional right to a fair trial without due process under the Fourteenth Amendment, resulting in their convictions and imprisonment.

To state a § 1983 claim of malicious prosecution, "a plaintiff must demonstrate that (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Welton*, 770 F.3d at 674 (citing *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996)). The elements of a claim of malicious prosecution under Indiana law are: "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Id.* (citing *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009)). As argued by Solan, the § 1983 malicious prosecution claim fails because the Plaintiffs have failed to state a claim of malicious prosecution against him under Indiana law.

As an initial matter, Solan argues that a malicious prosecution claim cannot be brought against him as a police officer because his role was in effectuating and maintaining a seizure, not in initiating and pursuing a criminal prosecution. However, as explained above, the Seventh Circuit in *Julian v. Hanna* authorized claims against Indiana police officers under § 1983 for malicious prosecution under the Fourteenth Amendment due process clause. 732 F.3d at 845–46.

27

The malicious prosecution claim fails on the third element because there was a judicial determination of probable cause to institute the actions against the Plaintiffs. Under Indiana law, "[a] judicial determination of probable cause in a criminal proceeding constitutes prima facie evidence of probable cause in a subsequent malicious prosecution suit." *Conwell v. Beatty*, 667 N.E.2d 768, 778 (Ind. Ct. App. 1996) (quoting *K Mart Corp. v. Brzezinski*, 540 N.E.2d 1276, 1280 (Ind. Ct. App. 1989)); *see also Swanson v. Horseshoe Hammond, LLC*, 445 F. App'x 868, 870 (7th Cir. 2011) (citing *Glass v. Trump Ind., Inc.*, 802 N.E.2d 461, 467 (Ind. Ct. App. 2004); *Johnson Cnty. Rural Elec. M'ship Corp. v. Burnell*, 484 N.E.2d 989, 992 (Ind. Ct. App. 1985)). The prima facie showing can be rebutted by evidence that the finding of probable cause was induced by false testimony, fraud, or improper means. *See Conwell*, 667 N.E.2d at 778 (quoting *K Mart Cop.*, 540 N.E.2d at 1280); *Glass*, 802 N.E.2d at 467; *see also Owens v. Downey*, No. 1:15-CV-776, 2017 WL 4868197, at *8 (S.D. Ind. May 26, 2017).

Here, the Amended Complaint does not allege that the judicial probable cause findings were based on withheld, manipulated, or falsified facts. Rather, all the alleged wrongdoing and its effects (e.g., M.W.'s identification of Pinkins, the testimony of the jailhouse informants, the recovered gun, and the DNA evidence from semen and hair) occurred after the judicial probable cause finding. As argued by Solan, none of the testimony in his affidavit or at the probable cause hearing in the state criminal proceedings referred to any of the allegedly manipulated, fabricated, or withheld evidence. *See* Ex. A. In other words, there are no allegations in the Amended Complaint or reasonable inferences that can be drawn therefrom that the judicial finding of probable cause was "induced by false testimony, fraud, or improper means." In their response brief, the Plaintiffs generally dispute the veracity of Solan's affidavit and testimony at the probable cause hearing, but they do not acknowledge or address the rebuttable presumption.

28

Thus, the Plaintiffs have failed to state a § 1983 claim of malicious prosecution against Solan, and the Court grants Solan's motion to dismiss this claim.[7] However, the Plaintiffs are not without recourse under § 1983 for their allegations of manipulation of evidence, falsification of evidence, and the withholding of exculpatory evidence that led to their wrongful convictions. Such a "claim is 'grounded in the due process guarantee of fundamental fairness in criminal prosecutions' and has long been recognized." *Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017) (quoting *Armstrong v. Daily*, 786 F.3d 529, 540 (7th Cir. 2015)); *see also Lewis*, 914 F.3d at 479–80 ("[C]onvictions premised on deliberately fabricated evidence will always violate the defendant's right to due process." (quoting *Avery*, 847 F.3d at 439)). Indeed, in Count I, the Plaintiffs allege a Fourteenth Amendment due process claim for the deprivation of their right to a fair trial, alleging that "the Defendants conducted a reckless investigation, deliberately withheld exculpatory evidence, and fabricated false reports, false testimony, and other evidence," resulting in their wrongful convictions. Am. Compl. ¶¶ 146–48. And, in Count III, they allege Fourth and Fourteenth Amendment claims based on the fabrication of evidence, including false police reports, false forensic reports, and fabricated testimony offered at trial proceedings. *Id*. at ¶ 165.

3.    *Conspiracy—the Individual Hammond Defendants and Solan*

The Hammond Defendants, Finnerty, Kasper, and Solan argue that the Plaintiffs have failed to allege sufficient facts to state a claim of a conspiracy to violate their constitutional rights. To prevail on a § 1983 conspiracy claim, "the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018)

---

[7] For the first time in their reply brief, the Hammond Defendants, Finnerty, and Kasper ask for dismissal of the Plaintiffs' § 1983 malicious prosecution claim, citing Solan's motion and reply brief. Because these Defendants did not move for dismissal on this claim and because Solan's arguments are specific to the allegations against him, the Court declines to entertain the belated request on the instant motion.

(quoting *Beaman*, 776 F.3d at 510). "Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Beaman*, 776 F.3d at 511 (citing *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)). To state a claim of conspiracy, a plaintiff must allege "the parties, the general purpose, and the approximate date of the conspiracy." *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) (citations omitted)).

At this stage of the litigation, the Amended Complaint alleges sufficient facts to state a plausible claim of a conspiracy to pursue false charges against the Plaintiffs. The Amended Complaint alleges that the conspiracy is between the "Hammond Defendant Officers" and the "ISP Defendants." Am. Compl. ¶ 185. The Amended Complaint defines the "Hammond Defendant Officers" as McBride, Rogalski, Stump, Tharp, Finnerty, Kasper, and Solan who are alleged to be Hammond City police officers, acting under color of law and within the scope of their employment. *Id.* at ¶¶ 13, 16, 17.[8] The "ISP Defendants" are defined as Epperson and Peterson who are alleged to be forensic serologists with the Indiana State Police, employed by the Indiana State Police, and acting under the color of law. *Id.* at ¶¶ 14, 19, 20. Thus, the parties to the conspiracy are McBride, Tharp, Rogalski, Stump, Finnerty, Solan, Kasper, Epperson, and Peterson. Although McBride, Tharp, Rogalski, Stump, Finnerty, and Kasper are correct that there are no specific factual allegations against any of them individually, group pleadings are permitted at this stage of the litigation given that they have been individually identified as participants. *See Fulton v. Bartik*, No. 20 C 3118, 2021 WL 2712060, at *5 (N.D. Ill. July 1, 2021) (recognizing that "group pleading is permissible so long as it provides notice to each

---

[8] Although Defendant William Stephens is listed in the caption of the Amended Complaint and is included as one of the Hammond Defendants bringing the motion to dismiss, the body of the Amended Complaint does not contain any allegations against him and does not list him as one of the "Hammond Defendant Officers." *See* Am. Compl. ¶¶ 16, 17.

defendant of the contours of the alleged deprivation and that he or she is alleged to have participated in it" (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Brooks v. Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009))).

The timeframe of the alleged conspiracy is the period throughout the underlying investigation through the criminal trials resulting in the wrongful convictions. The alleged general purpose of the conspiracy was "to frame [the Plaintiffs] for the crime and to thereby deprive them of their constitutional rights and liberty to be continuously taken away from [them], all as described in the various paragraphs of this Complaint." Am. Compl. ¶ 185. Having reviewed the facts alleged against all these Defendants as to their involvement in the investigation and reading the Amended Complaint as a whole, the Court finds the facts sufficient at this stage to state a claim of conspiracy and that the individual defendants have been given notice of their alleged participation. None of the moving defendants discuss any of the factual allegations or explain why they are insufficient. Notably, at this stage of the litigation, the Plaintiffs cannot know the specific information about the exact dates of the agreements and what was specifically said by each person. *See Loubser*, 440 F.3d at 443. The Court denies the motions to dismiss the § 1983 conspiracy claim.

4.      *Failure to Intervene—Solan*

Under certain circumstances, a plaintiff may bring a § 1983 claim against a state actor for the failure to intervene to prevent a constitutional violation. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). To state a failure to intervene claim, a plaintiff must allege that a defendant (1) knew that a constitutional violation was committed, and (2) had a realistic opportunity to prevent the harm from occurring. *Gill*, 850 F.3d at 342; *Yang*, 37 F.3d at 285. In Count V, the Plaintiffs allege that "during the constitutional violations described above, one or more of the

Hammond Police Defendants and ISP Defendants stood by without intervening to prevent the misconduct, despite having a reasonable opportunity to do so." Am. Compl. ¶ 180.

In his motion, Solan argues that the Plaintiffs recite the elements of the cause of action without any factual allegations that he had knowledge of other law enforcement officers' violations or that he had an opportunity to prevent those violations. He notes that most of the wrongdoing is alleged to have been done himself and that he cannot intervene in his own misconduct. However, given the factual allegations of conduct by various other defendants and that Solan is alleged to have participated in the misconduct with the other defendants, the Plaintiffs have sufficiently alleged facts from which a reasonable inference could be drawn that other Defendants committed misconduct in Solan's presence and he failed to intervene to prevent it from happening. The Court denies Solan's motion to dismiss the failure to intervene claim.

**E.      State Law Claims**

*1.      Individual Defendants—ITCA Immunity*

Under the ITCA, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the [ITCA], there is no remedy against the individual employee so long as he was acting within the scope of his employment."); *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003). Although invocation of immunity under the ITCA is an affirmative defense, when the allegations of the complaint satisfy all elements of an affirmative defense, the claim can be dismissed. *See Moore v. Corizon Health Inc.*, No. 1:17-CV-987, 2018 WL 1522658, at *8 (S.D. Ind. Mar. 28, 2018) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). In their response brief, the Plaintiffs concede that the ITCA bars the state law claims against the Defendants

individually. Pls.' Br. 14 n. 1, ECF No. 88. Accordingly, the Court dismisses with prejudice Counts VIII, X, XI, and XII against Defendants McBride, Rogalski, Stephens, Stump, Tharp, Finnerty, Kasper, Solan, and Peterson individually. Similarly, the Plaintiffs concede that their state law malicious prosecution claim is barred based on the individual Defendants' ITCA immunity and represent that they are proceeding solely on their federal malicious prosecution claim. *Id.* 14. Accordingly, the Court dismisses the state law malicious prosecution claim in Count X.

2.   *ITCA Notice Provisions*

The Hammond Defendants, Finnerty, Kasper, and Solan argue that the Plaintiffs' state law claims are barred for failure to comply with the notice provisions of the ITCA. However, failure to provide notice under the ITCA is an affirmative defense, *see Brown v. Alexander*, 876 N.E.2d 376, 383–84 (Ind. Ct. App. 2007), and plaintiffs are not required to anticipate and plead around affirmative defenses, *see Lewis*, 411 F.3d at 842 (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Thus, the Amended Complaint's silence on the issue of ITCA notice is not dispositive. The Court denies the motions to dismiss on this basis.

## CONCLUSION

Based on the foregoing, the Court:

(1)   GRANTS the Motion for Judicial Notice [ECF No. 66];

(2)   GRANTS in part and DENIES in part Defendant Michael Solan's Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 126];

(3)   GRANTS in part and DENIES in part the Motion to Dismiss of the "Hammond Defendants" [ECF No. 129];

(4)   GRANTS in part and DENIES in part the Motion to Dismiss of Leo Finnerty [ECF No. 131];

(5)     GRANTS in part and DENIES in part Defendant Peterson's Motion to Dismiss [ECF No. 136];

(6)     DENIES Defendants' Joint Motion for Summary Ruling [ECF No. 138];

(7)     GRANTS in part and DENIES in part Scott E. Yahne as Special Administrator of the Estate of Patricia Kasper's Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 157]; and

(8)     DENIES as moot the motions filed at docket entries 70, 72, 75, and 105.

As a result, the Court (1) DISMISSES without prejudice the § 1983 malicious prosecution claim (Count II) against Solan; (2) DISMISSES with prejudice the state law claims in Counts VIII, X, XI, and XII against Defendants McBride, Rogalski, Stephens, Stump, Tharp, Finnerty, Kasper, Solan, and Peterson in their individual capacities; and (3) and DISMISSES with prejudice the state law malicious prosecution claim (Count X) brought against all Defendants. The case remains pending against all Defendants.

SO ORDERED on September 7, 2021.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT