IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION

| | |
|---|---|
| ROOSEVELT GLENN, SR. and DARRYL KEITH PINKINS, SR., | ) ) ) |
| Plaintiff, | ) Case No. 2:18-cv-150-TLS-JEM ) ) Hon. Theresa L. Springmann |
| v. | ) |
| CITY OF HAMMOND, et al. | ) Hon. Mag. John Martin |
| Defendants | ) ) |

**PLAINTIFFS' RESPONSE TO DEFENDANT SOLAN'S MOTION TO COMPEL**

Now comes Plaintiffs, ROOSEVELT GLENN, SR. and DARRYL PINKINS, SR., by and through his counsel, and opposes Defendant Solan's Motion to Compel. In support, Plaintiffs state as follows:

**INTRODUCTION**

Plaintiffs were wrongfully convicted for a 1989 rape and robbery. Collectively, they spent more than 42 years wrongfully incarcerated before their exonerations. Having spent much of their lives behind bars, Plaintiff Darryl Pinkins now is 70 years old, and Plaintiff Roosevelt Glenn is 60 years old. Nobody has more to lose by delays in this case than Plaintiffs. Delays mean that defendants and witnesses may die, or that age and health challenges may limit Plaintiffs' ability to vindicate their constitutional rights. Accordingly, Plaintiffs have opposed discovery delays in this lawsuit and diligently pursued document production.

Plaintiffs and Defendant City of Hammond have cooperated with respect to the cost and logistics of document production. But the age of the case and the voluminous number of documents has caused significant delays in document production. Accordingly, no party has

1

taken a single deposition.  As Plaintiffs' counsel raised during the December 1, 2022, telephone conference, discovery has moved at a glacial pace, and as a result, Plaintiffs anticipate needing to extend the fact discovery deadline (currently March 1, 2023) by one year because the document production process has delayed depositions.  Defendant Solan, however, has propounded contention interrogatories on Plaintiffs that bear directly on the outstanding discovery.  Defendant Solan's contention interrogatories are premature, considering that Plaintiffs—despite the diligence of the parties—still are awaiting documents.  The Court should deny Defendant Solan's Motion to Compel, since this case still is in the early stages of discovery.

## I.   Background

### A.  Plaintiffs Have Diligently Pursued Discovery

Plaintiffs filed their Complaint on April 18, 2018.  Dckt. No. 1.  On May 18, 2018, Defendants filed a motion for a 90-day extension of time to answer Plaintiffs' Complaint.  Dckt. No. 20.  Just before the extended deadline, Defendant Solan requested an additional 90 days to answer the Complaint.  Dckt. No. 47.  Plaintiffs opposed another lengthy extension, seeking to avoid discovery delays.  Dckt. No. 51.  But the Court granted the extension, ordering Defendant Solan to answer Plaintiffs' Complaint by November 5, 2018—almost seven months after Plaintiffs filed their Complaints.  Dckt. No. 52.  The Court held a Rule 16 conference on August 30, 2018, and ordered that written discovery commence.  Dckt. No. 60.

On April 15, 2019—almost one year after Plaintiffs filed their Complaint—Defendants filed Motions for Judgment on the Pleadings.[1]  Dckt. Nos. 70 (Hammond Defs. MJP), 72 (Def. Finnerty MJP), 75 (Def. Solan MJP).  Defendants informed Plaintiffs that they planned to seek a

---

[1] Plaintiffs later filed an Amended Complaint on December 11, 2019, adding the administrators of the estates for the deceased defendants.  Dckt. No. 124.  In response, Defendants filed motions to dismiss.  Dckt. No. 126, 129.  The Amended Complaint and the motions to dismiss were substantively identical to the Complaint and the Motions for Judgment on the Pleadings.

stay.  Ex. 1, 2019 Corres. Loevy and Loevy.  Plaintiffs opposed Defendants' request.  *Id*. at 2.  Defendant Solan then filed a Motion to Stay Discovery.  Dckt. No. 82.

In the meantime, Plaintiff Glenn[2] propounded written discovery on Defendants on March 24, 2019, and May 24, 2019.  Ex. 2, 3, May 2019 RFP; Ex. 4, 5, 6, March 2019 Interrogatories.  Plaintiffs sought 28 categories of documents from Defendant City of Hammond and 30 categories of documents from the Officers Defendants.  Ex. 2, 3.  Plaintiff propounded 18 interrogatories on the Defendant Officers, 10 interrogatories on the City, and 14 interrogatories on Defendant Peterson.  Ex. 4, 5, 6, March 2019 Interrogatories.  Before Plaintiffs secured any documents, however, the Court granted the Court granted Defendants' Motions to Stay.  Dckt. No. 103 (staying discovery on June 26, 2019).  Defendants made no disclosures and produced no documents before the stay.  The stay prevented Plaintiffs from securing documents from Defendants for more than two years.

On September 7, 2021, the Court granted in part and denied in part Defendants' Motions to Dismiss.  Dckt. No. 164.  The bulk of Plaintiffs' claims survived, and all Defendants remained in the lawsuit.  *Id.* 33-34.  The Court lifted the discovery stay on October 7, 2021.  Dckt. No. 179.  The Court also entered a scheduling order, setting March 1, 2023, as the close of fact discovery.  Dckt. No. 178.

Plaintiffs served written discovery (for a second time) on Defendants on December 1, 2021.  Ex. 7, 8, 9 (RFP); Ex. 10, 11, 12 (Interrogatories).  Defendants sought an extension until January 31, 2022, to respond to Plaintiffs' written discovery.  Dckt. No. 181.  On January 31, 2022, Defendant Solan sought a five-day extension to produce documents and answer Plaintiffs

---

[2] While the discovery requests were on behalf Plaintiff Glenn, the discovery sought was relevant to both Plaintiffs' claims.

3

interrogatories. Ex. 13, Corres with Solan re: Extension. Plaintiffs agreed. *Id.* Defendant Solan then produced 238 pages of notes and other personal information, indicating that he had no custody of the investigative files and referring Plaintiffs to the City for document production. On January 31, 2022, Defendant Solan responded that he did not maintain custody of the investigative file for the Wimmer investigation. Ex. 14, RFP Responses.

In February 2022, Plaintiffs contacted the City about its concerns with document production. On February 8, 2022, Plaintiffs sent a Rule 37.1 Letter to the City. Ex. 15, Rule 37 Letter, 2/8/2022. Plaintiffs' Letter expressed serious concern about the lack of document production, especially because of the advancing age of the case. *Id.* at 1. The Letter recounted that Plaintiffs had served document requests on May 24, 2019, nearly three years before, but still had no documents. *Id.*

On March 8, 2022, the City produced its first set of documents, which included nearly 2,000 pages. Ex. 16, 3/4/2022 Email. These documents included Hammond Police Department policies from the 1990s, personnel files for Defendant Stump, Defendant Tharp, Defendant Stephens, Defendant Finnerty, reports about other, potentially related crimes, and limited documents about the Wimmer investigation.[3] *Id.*

Plaintiffs and the City reached a brief impasse about the cost and logistics of document production at that point, since the underlying criminal case dated back to 1989 and involved thousands of pages of unscanned documents. During a status conference on April 28, 2022, the Court encouraged Plaintiffs and the City to work cooperatively to facilitate document production. Dckt. No. 188. That same day, Plaintiffs' counsel contacted counsel for the City by email and proposed cooperating to use an external copying service to scan and produce the

---

[3] Defendant Solan's personnel file still has not been produced.

4

documents. Ex. 17, Apr. and May Corres at 1. On May 9, counsel for the City informed Plaintiffs' counsel that he was securing a quote for document copying. *Id.* at 2. Plaintiffs' counsel continued communicating with the City, attempting to move forward the document production. Ex. 18, May 27 Corres.

On June 28, 2022, Plaintiffs and the City conferred by phone about document production. The parties reached a detailed agreement about document scanning and production, agreeing to split the cost. Ex. 19, June 28 Corres. Three weeks later, Plaintiffs followed up with the City about document production, concerned that no further document production had occurred. *Id.* at 2. Counsel for the City conformed that it had received the initial batch of documents, and that it would provide those documents to Plaintiffs. *Id.* Plaintiffs received this batch of documents on July 29, 2022, which included about 1,100 pages of the investigative file. Ex. 20, July 29, 2022 Corres.

Meanwhile, on August 24, 2022, Defendant Solan served Plaintiffs with his First Set of Interrogatories. Ex. 21. Plaintiffs sought additional time to respond, explaining that they still needed documents—including the remainder of the Wimmer investigative file—from the City. Ex. 22, October 4, 2022 Email. On October 4, 2022, Plaintiff's counsel contacted the City again, concerned about document production. Ex. 23, 10.4.2022 Corres. Plaintiff's counsel sought the remaining two boxes of the investigative file, noting that Plaintiffs could not respond to Defendants' written discovery or conduct depositions without these outstanding documents. Id. at 4-5.

On October 6, 2022, the City supplied Plaintiffs with the remainder of the Wimmer investigative file. Ex. 24, 10/6/22 Corres. On October 10, 2022, the City provided Plaintiffs with trial transcripts from the *Mayes* and *Hill* litigations, and transcripts from the 1982 *Hill*

5

criminal case, which were relevant to Plaintiffs' municipal liability claim.  Ex. 25, 10/10/2022 Corres.  Those documents total more than 10,000 pages.

Meanwhile, Plaintiffs have sought to retrieve the prosecution file in the underlying criminal litigation for several months.  After extensive coordination, Plaintiffs reviewed files at the Lake County Prosecutor's Office on December 8, 2022.  The Lake County Prosecutor's Office has 37 boxes of documents pertaining to this case.  Plaintiffs are now coordinating with the Lake County Prosecutor's Office for external scanning of those documents.  Additionally, Plaintiffs are awaiting additional documents from the City, including additional documents from the *Mayes* and *Hill* cases and Defendant Solan's personnel file.  Finally, Plaintiffs have a number of outstanding subpoenas to various law enforcement agencies pertaining to investigative files for criminal investigations that may have been connected (*i.e.*, committed by the same perpetrators) as the Wimmer rape and robbery.

In short, Plaintiffs diligently have sought document production in this case.  Plaintiffs and the City have cooperated on the cost, logistics, and timing of document production, and agreed that Plaintiffs will respond to the City's interrogatories after they have secured all the relevant documents.  Defendant Solan's position that Plaintiffs must respond to his contention interrogatories now is unreasonable and premature, and his motion should be denied.  The more appropriate time to respond to contention interrogatories is at the end of discovery, certainly not here, where discovery has just now meaningfully begun.

### B. Defendant Solan's First Set of Interrogatories Consisted of Contention Interrogatories

Defendant Solan's first set of interrogatories to Plaintiffs consisted of 17 contention interrogatories:

> 1. Identify each and every piece of exculpatory evidence that you contend Solan deliberately withheld or concealed and identify all facts supporting those contentions.

2. Identify any and all reports, testimony, and other evidence you contend Solan fabricated or falsified and identify all facts supporting those contentions.

3. Identify each person and/or police officer you allege Solan specifically failed to adequately train and supervise in Count IV of the Complaint.

4. Identify any and all unconstitutional actions and related misconduct you contend were committed by the subordinates in Count IV of the Complaint.

5. Identify all facts upon which you rely for your contention that Solan knew or should have known of his subordinates' unconstitutional actions and related misconduct, as alleged in Count IV of the Complaint.

6. Identify each instance of misconduct you allege occurred that Solan failed to intervene to prevent in Count V of the Complaint, and identify each person who conducted each instance of misconduct identified.

7. Identify each and every reasonable opportunity Solan had to intervene to prevent the misconduct from occurring but failed to do so that you allege in paragraph 180 of the Complaint.

8. Identify all facts supporting your contention that the Hammond Defendant Officers and the ISP Defendants reached an agreement to frame Plaintiffs and deprive them of their constitutional rights, including when, where, how, and by what means such agreement took place, as alleged in Count VI of the Complaint.

9. Identify each and every overt act you allege was committed in furtherance of the conspiracy identified in Count VI of the Complaint and identify each person you contend committed each overt act identified.

10. Identify any and all DNA evidence that you contend Solan fabricated and/or withheld.

11. Identify all facts supporting your contentions that the testimony and/or statements given by the informants, George Hennington and Reggie West, were false.

12. Identify all facts supporting your contention that the testimony and/or statements given by the informants, George Hennington and Reggie West, were fabricated by Solan.

13. Identify all facts supporting your contention that Solan ultimately pressured and manipulated M.W. into identifying Mr. Pinkins as one of her attackers, including the substance of the information you contend Solan provided to M.W. that influenced her subsequent identifications as alleged in paragraph 83 of the Complaint.

      14. Identify all facts supporting your contention that Solan fabricated false police reports including the date of any such report and the specific portions of the reports that you contend are false.

      15. Identify all facts supporting your contention that Solan fabricated false forensic reports including the date of any such report and the specific portions of the reports that you contend are false.

      16. Identify each person you expect to call as a witness in this action and, for each person identified, provide the person's address, telephone number, and a summary of his or her expected testimony.

      17. Identify each and every exhibit you intend to rely on or introduce as evidence at trial and/or in support of any dispositive motion.

Plaintiffs conferred with Defendant Solan about the interrogatories by phone on November 23, 2022. Plaintiffs explained that they would respond to contention interrogatories, but that it is currently too early in discovery to do so. *See* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference . . . ."). Defendant Solan immediately threatened Rule 11 sanctions, asserting that Plaintiffs' Complaint must be frivolous if they are unwilling to respond to contention interrogatories now. Of course, Plaintiffs complaint is not frivolous. Plaintiffs are innocent and were exonerated in 2016 and 2017, respectively, after DNA evidence proved their innocence. And Plaintiffs' claims are corroborated by the fact that on November 22, 2022, a jury awarded James Hill $25.5 million in his federal civil rights lawsuit against Defendant Solan. Defendant Solan's contention interrogatories simply are premature and should be deferred until the end of discovery.

**II.   Legal Standard**

Contention interrogatories "[b]asically . . . require the answering party to commit to a position and give factual specifics supporting its claims." *Ziemack v. Centel Corp.*, No. 92 C

3551, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995). Pertinent here, "Rule 33(c) provides that contention interrogatories may not be answered until, at the earliest, after substantial discovery has taken place, or at the latest, at the final pre-trial conference." *In re H&R Block Mortg. Corp., Prescreening Litig.*, No. 2:05CV162RL, 2006 WL 3692431, at *4 (N.D. Ind. Dec. 13, 2006) (citing Fed. R. Civ. P. 33(c)); *Logan v. Burge*, No. 09 C 5471, 2010 WL 4074150, at *4 (N.D. Ill. Oct. 12, 2010) (delaying compelling contention interrogatory responses because plaintiff could not yet be expected to have all information necessary to support claims until later in discovery); *Gregg v. Local 305 Ibew*, No. 1:08-CV-160, 2009 WL 1325103, at *6-7 (N.D. Ind. May 13, 2009) (denying motion to compel contention interrogatory responses because several months of discovery remained).

"The general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness." *Ziemack*, 1995 WL 729295, at *2. As *Ziemack* explains:

> Efficiency provides that the parties should not be obliged to answer contention interrogatories repeatedly. Further, because one of the chief purposes of contention interrogatories is to narrow the issues for trial, fairness dictates that parties not be forced to prematurely take a position, which would produce an artificial narrowing of the issues, instead of an informed paring down.

*Id.* at *2 n.3.

In *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, the court denied a motion to compel contention interrogatories before the end of discovery, reasoning that interrogatories do not "'chain' [a party] to whatever 'contention or theory' it then held." 230 F.R.D. 538, 542 (N.D. Ill. 2005). If the contention or theory later changed, it "would serve no useful purpose" and "render the plaintiffs' discovery efforts exercises in futility." *Id.* at 541-42. In short, since

the responding party would is not bound to its interrogatory answers "there would, at best, be an evanescent and illusory narrowing of the issues . . . ." *Id.* at 542.

Defendants shoulder the burden of justifying why early answers to contention interrogatories are necessary. The moving party must "present 'specific, plausible grounds' as to why the party requires early answers to contention interrogatories." *H&R Block Mortg. Corp.*, 2007 WL 325351, at *6; *Med. Assur. Co., Inc. v. Weinberger*, No. 4:06 CV 117, 2011 WL 2471898, at *6 (N.D. Ind. June 20, 2011) ("The burden rests with the party propounding the interrogatories to show its specific reasons for demanding early answers to contention interrogatories."); *Gregg*, 2009 WL 1325103 at *7 ("[C]ontention interrogatories at this stage are premature, and Gregg offers no reason reasoning why the Defendants should provide early answers."). "The requesting party must do more than argue it is entitled to understand the opposing party's factual theories." *Weinberger*, 2011 WL 2471898, at *6 (citing *In re H & R Block Mortg. Corp., Prescreening Litig.*, No. 2:06-MD-231 (MDL 1767), 2006 WL 3692431, at *4 (N.D. Ind. Nov. 18, 2019)).

### III. Argument

#### A. Responses to Defendant Solan's Contention Interrogatories are Premature

Compelling Plaintiffs to answer contention interrogatories at this stage of litigation is premature. Although Plaintiffs filed their lawsuit in 2018, discovery has been stayed—at Defendant Solan's behest—for much of the past four years. *See* Dckt. No. 82 (Def. Solan's Motion to Stay). No discovery happened before the case was stayed, and Plaintiffs have cooperated with the City to scan and produce documents for the past year. The age of the case— *i.e.*, file location, storage, and the volumes of non-electronic documents—has made document production an arduous process. As Plaintiffs indicated during a recent status conference with the Court, they anticipate needing to extend the current fact discovery deadline (March 1, 2023) by

one year. Defendant Solan's argument that Plaintiffs must answer contention interrogatories now—instead of at the end of discovery—is impractical and has no legal support.

Defendant Solan articulates no specific reason why early contention interrogatories are appropriate. Without a specific justification for why early answers would be beneficial, courts ordinarily do not require responses to contention interrogatories before the end of discovery. *See, e.g.*, *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 338–39 (N.D. Cal. 1985) ("This court will look with considerable skepticism at sets of contention interrogatories, filed early in the pretrial period, that simply track all the allegations in an opponent's pleading. In this court a party who wants *early* answers to contention interrogatories must hand-craft a limited set of questions. In addition, such a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56.").

Instead, Defendant Solan asserts that either 1) Plaintiffs have filed a frivolous complaint, warranting Rule 11 sanctions, or 2) Plaintiffs are refusing to produce the evidence supporting their claims. Dckt. No. 194 at 2. This argument presents a false dichotomy. The purpose of a Complaint is "is to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader, and in case of an affirmative pleading, the relief being demanded." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1182 (4th ed.); *see also Phernetton v. McDonald's*, No. 2:13-CV-00487-APR, 2014 WL 3928407, at *7 (N.D. Ind. Aug. 12, 2014) ("[T]his case is only in the discovery stage, and it is at this stage that parties are to gather evidence to support their positions. Neither party must prove any part of its claim or defense at the stage.").

11

The purpose of discovery is to "narrow, simplify, and frame the issue" for trial and to enable parties to secure the evidence needed for trial. Wright & Miller, *Federal Practice and Procedure* § 2001; *see also Freeman v. Ocwen Loan Serv., LLC*, No. 118CV03844TWPDLP, 2022 WL 2356398, at *2 (S.D. Ind. June 17, 2022) ("Discovery is a mechanism to avoid surprise, disclose the nature of the controversy, narrow the contested issues, and provide the parties a means by which to prepare for trial."). Indeed, discovery would be unnecessary if plaintiffs were required to be prepared for trial by the time of filing the complaint.

The purpose of discovery—to narrow contested issues and prepare for trial—supports the "general policy" of deferring contention interrogatories until the end of discovery. *Ziemack*, 1995 WL 729295, at *2. "Contention interrogatories are often better answered after parties are near the end of discovery because they are better able to give complete responses." *Whitchurch v. Canton Marine Towing Co.*, No. 16-CV-3278, 2017 WL 1165988, at *2 (C.D. Ill. Mar. 23, 2017); *see also Sigman v. CSX Corp.*, No. 3:15-cv-13328, 2016 WL 7444947, at *2 (S.D.W.Va. Dec. 27, 2016) (summarizing that "most courts agree" that contention interrogatories "are more appropriately used after a substantial amount of discovery has been conducted—typically at the end of the discovery period" because 1) it is unfair to require parties to prematurely articulate theories that haven't been fully developed and 2) the risk of vague, ambiguous responses because of an undeveloped record). Thus, Defendant Solan's argument that Plaintiffs' reluctance to respond to contention interrogatories at this stage of the litigation means their Complaint is frivolous is meritless.

Next, Defendant Solan asserts that prematurity is not a valid objection. Dckt. No. 194 at 6. But the cases that Defendants cite for support do not apply here. The first case Defendant Solan cites, *Remy Inc. v. Tecnomatic, S.P.A.*, never mentions contention interrogatories. No.

1:11-CV-00991-SEB, 2013 WL 1183334, at *1 (S.D. Ind. Mar. 21, 2013). The second case Defendant Solan cites, *Williams v. Biomet*, involves a different procedural situation. No. 3:12-MD-2391RLM-MGG, 2019 WL 6117594, at *3 (N.D. Ind. Nov. 15, 2019). *Biomet* is a multi-district litigation where case-specific discovery had closed, the MDL docket had been operative for seven years, and general discovery already had been completed. *Id.* at *1-2. Because *Biomet* is an MDL involving a different discovery structure and schedule than this case, it provides no meaningful guidance here.

Contrary to Defendant Solan's position, courts routinely deem contention interrogatories premature, and defer them to the end of discovery. *See, e.g.*, *Logan*, 2010 WL 4074150 at *4 (deeming premature City's request for responses to contention interrogatories and directing plaintiff to respond later in discovery); *Tyson*, 230 F.R.D. at 542 (denying motion to compel because contention interrogatories were premature); *Gregg*, 2009 WL 1325103 at *7 (denying motion to compel premature contention interrogatory responses because discovery was ongoing).

Defendant Solan asserts that Plaintiff has received all the documents from the City, so they should be able to respond to his discovery requests. Dckt. No. 194 at 6. This contention is not accurate. Plaintiff still is securing documents from the City, including documents pertaining to the *Mayes* and *Hill* cases, and Defendant Solan's personnel file. Notably, juries in this district have found that Defendant Solan violated Plaintiff Mayes and Hills' constitutional rights and awarded more than $34,000,000 in jury verdicts. Defendant Solan's withholding of exculpatory evidence in those cases is directly intertwined with Plaintiffs' claims here. Plaintiffs also are awaiting the Lake County Prosecutor's file, which is pertinent to Plaintiff's *Brady* claims. Thus, Plaintiffs still do not have the universe of documents pertinent to this litigation. And, in any event, the City produced more than 13,000 pages of documents. As Defendant Solan recognizes,

Plaintiff did not have the entire Wimmer investigative file until October 10, 2022. It is unreasonable that Plaintiffs could review this number of documents—especially because many documents are handwritten—in a matter of days or weeks and respond to Defendant Solan's discovery requests.

### B. Interrogatory No. 18 Invades Work-Product Doctrine

Defendant Solan also seeks to compel an additional interrogatory response. Defendant Solan's Interrogatory No. 18 improperly seeks the following information:

> Identify each person, not named as a defendant in this action, whom you, your agent, or your legal counsel has interviewed, talked with, or contacted regarding this action, in relation to this action, as a result of this action, and/or in relation to the facts and/or allegations underlying this action.

As explained, this interrogatory invades the work-product doctrine. The work product privilege is codified in Federal Rule of Civil Procedure 26(b)(3) which provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). *See also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010). "The work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Id.* at 621-22 (citing *Hickman v. Taylor,* 329 U.S. 495 (1947)).

The court in *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 c 610, 2019 WL 2644243, at *4-5 (N.D. Ill. June 27, 2019) addressed the propriety of this same request. There, the court concluded that interrogatories seeking the identity of individuals that a party's counsel or agent spoke with invaded work product because it asked a party "to identify the people their lawyers selected to interview, *i.e.*, to reveal their lawyers' mental processes. That is an impermissible invasion of work product." *Id.* at *5. The court explained that the requesting party should instead secure the information it needs by asking the opposing party to identify witnesses with knowledge about the underlying investigation. *Id.*

*Smith-Brown* relied on *Tracy v. NVR, Inc.*, 250 F.R.D. 130, 132-133 (W.D.N.Y. May 7, 2008) which delved into the propriety of this interrogatory in detail. There, the court acknowledged that courts have reached different conclusions on this issue. *Id.* at 132. But the Court concluded that the more persuasive decisions "are those that draw a distinction between discovery requests that seek identification of persons with knowledge about the claims or defenses (or other relevant issues)—requests that are plainly permissible—and those that seek the identification of persons who have been contacted or interviewed by counsel concerning this case." *Id.* "[D]isclosure of the identities of witnesses interviewed and contacted "'would inevitably teach [the requesting party] which individuals [opposing counsel] consider[s] more or less valuable as witnesses and how [he or she] [is] preparing for trial.'" *Id.* (quoting *United States v. District Council of N.Y. City*, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *10 (S.D.N.Y. Aug. 18, 2022)).

Many courts throughout the country have agreed with *Tracy*'s conclusion and reasoning. *See, e.g.*, *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 270 F. Supp. 220, 225 (D.D.C. 2017) (agreeing with *Tracy*, and concluding that permitting parties to seek identification

15

of everyone contacted or interviewed would invade work product by revealing how counsel chooses to prepare their case, the efforts they undertake, and the people they interview); *In re: Engle Cases*, 2013 WL 12156250, at *3 (M.D. Fla. June 25, 2013) (adopting *Tracy*'s reasoning and conclusion, and adding that this information "reflects counsels' impressions and strategic decision-making and thus us entitled to absolute protection."); *Becker v. TIG Ins. Co.*, No. 3:21-CV-05185-JHC, 2022 WL 13925733, at *1 n.1 (W.D. Wash. Oct. 24, 2022) (favorably quoting *Tracy*'s distinction between permissible and impermissible requests, and concluding that party may not ask opposing counsel who they have interviewed).

Thus, the identities of every individual that Plaintiffs' counsel or their agents have spoken to is protected under the work product doctrine. *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (work-product protections extend to investigators and other agents). Defendant Solan has Plaintiffs' Rule 26(a) disclosures, which is the proper vehicle for identifying persons with knowledge. The Court should deny Defendant Solan's attempt to compel a response to this interrogatory.

## Conclusion

Defendant Solan's Motion to Compel interrogatory responses to his contention interrogatories should be denied as premature. His motion to compel a response to his final interrogatory (No. 18) should be denied altogether.

Respectfully submitted,

s/ Margaret Campbell
One of Plaintiff's Attorneys
Jon Loevy
Elliot Slosar
Margaret Campbell
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607

## **CERTIFICATE OF SERVICE**

I, Margaret Campbell, an attorney, hereby certify that on December 23, 2022, I filed the foregoing motion using the Court's CM/ECF system, which effectuated service on all counsel of record.

/s/ Margaret Campbell
*One of Plaintiff's Attorneys*
