**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION**

ROOSEVELT GLENN, SR. and DARRYL KEITH PINKINS, SR.,

Plaintiff,

v.

CITY OF HAMMOND, et al.

Defendants

Case No. 2:18-cv-150-TLS-JEM

Hon. Theresa L. Springmann

Hon. Mag. John Martin

**PLAINTIFFS' SUR-REPLY IN SUPPORT OF THEIR OPPOSITION TO <u>DEFENDANTS' MOTION TO COMPEL</u>**

Now comes Plaintiffs, ROOSEVELT GLENN, SR. and DARRYL PINKINS, SR., by and through his counsel, and sur-replies to Defendant Solan's Reply in support of his Motion to Compel. In support, Plaintiffs state as follows:

**INTRODUCTION**

Defendant Solan portrays himself as the victim of a frivolous complaint. But Solan's history of adverse civil rights verdicts suggests otherwise. A federal jury recently awarded James Hill $25 million in compensatory damages and $500,000 in punitive damages against Defendant Solan for failing to disclose exculpatory evidence, resulting in Mr. Hill's 17.5 year wrongful incarceration. Ex. 1, Hill Article. James Hill has another lawsuit pending against Defendant Solan arising from his second wrongful conviction. *Hill v. Nw. Ind. Major Crimes Task Force, et al.*, No. 22-262 (N.D. Ind.). In 2006, Larry Mayes won a $9 million jury verdict against Defendant Solan for failing to disclose exculpatory evidence, causing his wrongful

conviction. Ex. 2, Mayes Article. The egregious misconduct that caused Plaintiffs' wrongful convictions is unparalleled, even for Solan's standards.

Defendant Solan asserts that Plaintiffs did not inform him that the City of Hammond has not yet produced all of its documents, or that there was outstanding discovery from the Lake County Prosecutor's Office. To the contrary, and as Plaintiffs' discovery objections illustrates, Plaintiffs have been clear that document production in this case has moved slowly, thus impacting their efforts to move this case forward. Plaintiffs have informed the Court and the parties on every status call that there are still outstanding documents. Defendants, including Solan, have received notices of subpoenas from Plaintiffs, including to the Lake County Prosecutor's Office. In response to a subpoena, the Lake County Prosecutor's Office has recently produced 38 boxes of materials about this case. A professional copying service currently is in the process of exporting 46,000 pages of materials to Plaintiffs, which Plaintiffs will produce to all parties when available.

Ignoring the above, Defendant Solan asserts in his reply that "the only thing moving at a glacial pace is Plaintiffs' prosecution of this case." Dckt. No. 197 at 5. Defendant Solan, however, seems to have forgotten that this case was stayed—over Plaintiffs' objections—for three years at Defendant Solan's request. Dckt. No. 82. Plaintiffs have sought a cooperative working relationship with the City of Hammond on document production, and paid for half of the City's cost to produce documents. Dckt. No. 196-19. Plaintiffs still are awaiting documents from the City of Hammond, including Defendant Solan's personnel file and documents pertaining to one of Solan's *other* wrongful convictions. Why Defendant Solan blames Plaintiffs for other entities' document production delays is unclear—although Defendant Solan does have a

track record of accusing people of crimes they didn't do. Plaintiffs are pushing this case forward, despite the challenges of securing voluminous documents from more 30 years ago.

### A. Plaintiffs Have *Brady* Claims Based on Documents that Solan Claims Have no Relevance to Him

Defendant Solan suggests that none of the outstanding document requests "remotely pertain" to him, so there is no reason that Plaintiffs should not immediately answer his interrogatories. Not so. The Lake County Prosecutor's Office files about this case are directly related to *Brady* claims against Defendant Solan. The Prosecutor's Office file will illustrate what evidence Defendant Solan supplied to the prosecutor, and what evidence he failed to disclose. *See Cairel v. Alderden*, 821 F.3d 823, 832 (7th Cir. 2016) ("A police officer's failure to disclose exculpatory evidence to a prosecutor may foreseeably result in a violation of the accused's due process rights under *Brady*."). Thus, the Lake County Prosecutor's file directly pertains to what evidence Defendant Solan disclosed to the prosecutor, and whether he satisfied his *Brady* obligations.

Similarly, subpoenas to other law enforcement agencies are directly related to *Brady* claims against Defendant Solan. For example, Defendant Solan investigated other crimes related to M.W.'s rape and robbery. In 1990—months after M.W.'s attack and Plaintiffs' arrests—Defendant Solan participated in another bump and rob/sexual assault investigation conducted by the Lake County Police Department. Ex. 3, Lake County Police File. There, two black males sideswiped a woman who was driving alone at 2:50 a.m. in Gary, Indiana. *Id.* at LCSD SUB RESP 13-14. The men exited their car, approached the woman's car, demanded money, and sexually assaulted her. *Id.* at LCSD SUB RESP 13-14. A pager recovered from the car believed to have been used in the crime belonged to a man named Darryl Henderson, and the victim identified Henderson as her attacker. *Id.* at LCSD SUB RESP 77-78.

In July 1990, Defendant Solan interrogated Henderson about the crime. *Id.* at LCSD SUB RESP 74-76. Defendant Solan's participation in this investigation is evidence that in 1990—months after Plaintiffs had been arrested—Defendant Solan was still investigating whether these similar crimes occurring in Lake County had been committed by the same perpetrators that robbed and raped M.W. While Defendant Solan conducted interrogations of suspects and learned that such suspects were identified by victims, he buried such information from Plaintiffs. Then, during Plaintiff Pinkins' post-conviction hearing in 2002, Defendant Solan testified that while bump and rob crimes continued occurring after Plaintiffs were arrested, "[t]hose incidents were not similar," and "he knew they were not connected to this case." Ex. 4, Solan 2002 PCR Tr. at PL 7961-62. Regardless of Solan's personal opinions, which have led to multiple wrongful convictions in Hammond, he had a constitutional obligation to disclose this evidence to Defendants. Indeed, undisclosed evidence about alternate suspects constitutes *Brady* evidence. *See Virgil v. City of Newport*, 545 F. Supp. 3d 444, 475 (E.D. Ky. 2021) (denying summary judgment on *Brady* violation involving defendant officers' investigation into whether serial killer had committed the crime for which plaintiff had been arrested).

Plaintiffs learned about this information from a subpoena to the Lake County Sheriff's Department – not Solan. While Defendant Solan chastises Plaintiffs for not deposing him at this stage of the litigation, they simply can't do so until all the relevant materials are returned and reviewed. An exception to this would be if Defendant Solan were agreeable to sitting for multiple depositions over the course of discovery. But Defendant Solan's positions thus far in the litigation suggest that he would be unwilling to sit for multiple depositions. Defendant Solan's contention that this evidence has nothing to do with him is meritless. Plaintiffs should

be permitted to develop their *Brady* claims using all the pertinent documents and deposition testimony before answering Defendant Solan's contention interrogatories.

**B. Defendant Solan Seeks Premature Answers to Contention Interrogatories**

Defendant Solan claims he has not propounded contention interrogatories. Dckt. No. 197 at 6. But Defendant Solan's interrogatories are, by any definition, contention interrogatories. "'Contention interrogatories are interrogatories that seek to clarify the basis for an adversary's legal claims." *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418 n.2 (6th Cir. 1998) (citing *Taylor v. FDIC*, 132 F.3d 573, 762 (D.C. Cir. 1997), then citing *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996)). "Some people classify as contention interrogatories questions asking the opposing party to indicate what it contends or whether it makes some specified contention." *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995). "Other people classify as contention interrogatories questions asking an opposing party to: state all facts or evidence upon which it bases some specific contention; take a position and apply law and facts in defense of that position; or explain the theory behind some specified contention." *Id.*; *see also Gregg v. Local 305 Ibew*, 2009 WL 1325103, at *6 (N.D. Ind. May 13, 2009) (defining contention interrogatories as questions asking a party to indicate what it contends or state all facts or evidence upon which it bases some specific contention); *Mercasia USA Ltd. v. Zhu*, No. 3:17-CV-718 JD, 2023 WL 1991701, at *9 (N.D. Ind. Feb. 14, 2023) ("[C]ontention interrogatories serve an important purpose in enabling a party to discover facts related to its opponent's contentions."); *U.S. ex rel. Tyson v. Amerigroup Ill., Inc.*, 230 F.R.D. 538, 545 (N.D. Ill. 2005) (defining contention interrogatories as asking a party "to state all the *facts* on which it *bases* some specified contention") (quoting *In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 590 (E.D. Pa. 1989)). In *H&R Block Mortgage Corp.*, 2006 WL 3692431, at *4 (N.D. Ind. Dec. 13, 2006), the court concluded that "interrogatories seeking information regarding the factual basis for

specific allegations in the Plaintiff's Complaint" were contention interrogatories. According to Defendant Solan, that's exactly what he's seeking here. Dckt. No. 197 at 6-7.

Defendant Solan asserts that courts routinely find contention interrogatories appropriate. To clarify, Plaintiffs are not arguing that contention interrogatories are improper. The issue here is timing; the parties have not even begun depositions, and despite the age of the case, much discovery is still ahead. When deciding whether to require early answers to contention interrogatories, "[t]he court may ask if early answers are likely to require multiple supplemental answers or require a party to commit prematurely to positions, thereby artificially narrowing the issues." *Med. Assur. Co. v. Weinberger*, 2011 WL 2471898, at *5 (N.D. Ind. June 20, 2011). The main purpose of contention interrogatories is to narrow the issues for trial. *In re Northfield Labs. Inc. Sec. Litig.*, 264 F.R.D. 407, 412 (N.D. Ill. 2009). "Efficiency prescribes that the parties should not be obliged to answer contention interrogatories repeatedly. Further, because one of the chief purposes of contention interrogatories is to narrow the issues for trial, fairness dictates that parties not be forced to prematurely take a position, which would produce an artificial narrowing of the issues, instead of an informed paring down." *Ziemack*, 1995 WL 729295, at *4. Fed. R. Civ. P. 33(a)(2). Here, Plaintiffs do not seek to evade answering contention interrogatories altogether. Instead, Plaintiffs seek to respond to Defendant Solan's contention interrogatories closer to the end of discovery to pare down the issues for trial. Contrary to Defendant Solan's representations to the contrary (Dckt. No. 197 at 8), Plaintiffs have a basis for the claims against Solan, and should be permitted to flesh out those claims during discovery. *See Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987) (plaintiffs must have an outline of the claim when filing their Complaint, and discovery "fills in the details").

**C. Interrogatory No. 18 Invades the Work-Product Doctrine**

Defendant Solan further contends that the work product doctrine only protects documents and tangible things, thus entitling him to a list of everyone Plaintiffs, their attorneys, or their agents have "interviewed, talked with, or contacted regarding this action, in relation to this action, as a result of this action, and/or in relation to the facts and/or allegations underlying this action." Dckt. No. 196 at 14; Dckt. No. 197 at 9-10. But the work product doctrine is broader than Defendant Solan represents. "Rule 26 applies only to tangibles," but "*Hickman v. Taylor* and other common law developments also govern intangibles, such as interviews." *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000); *Jackson v. City of Chicago*, No. 03 C 8289, 2005 WL 8177405, at *3 (N.D. Ill. Dec. 9, 2005) ("Although Rule 26(b)(3) covers intangibles, *Hickman* is more broadly construed to cover intangibles as well."); *Walker v. White*, No. 16-CV-7024, 2019 WL 1953124, at *4 (N.D. Ill. May 2, 2019) ("Further, Defendants' contention that only 'documents and tangible things' are protected overlooks established case law that the work product doctrine extends to 'intangibles.' In *Hickman*, the Supreme Court stated that attorney work product is reflected in 'tangible *and intangible* ways.'").

As the Supreme Court explained in *Hickman*:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.'

*Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

Consistent with *Hickman*, “work product includes ‘[s]ubject matter that relates to the preparation, strategy, and appraisal of the strengths and weaknesses of the [ ] action, or to the activities of the attorneys involved, rather than to the underlying evidence.’ *Id.* (citing *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 519 (N.D.Ill.1990)). Actions and activities include “identification of those persons whom counsel . . . has interviewed concerning the case.” *Tracy v. NVR, Inc.*, 250 F.R.D. 130, 133 (W.D.N.Y. May 7, 2008). Defendants cannot “piggyback on the fact-finding investigation” of Plaintiffs by seeking information about their investigative strategy. *Cooper v. Rezutko*, 2022 WL 406387, at *4 (N.D. Ind. Feb. 10, 2022) (quoting *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2010)).

Finally, Defendant Solan differentiates between counsel, the plaintiffs themselves, and their non-attorney agents. Dckt. No. 197 at 10-11. Solan contends that work product extends only to attorneys, not to Plaintiffs or their non-attorney agents. *Id.* But, again, Solan interprets work product protections too narrowly. Rule 26(b)(3) protects a “party or its representative (including the other party’s attorney, consultant, surety, indemnitor, insurer, or agent).” In *Tracy*, the disputed interrogatory requested the same information that Defendant Solan seeks here: “[i]dentify any and all interviews [d]efendant or its agents, including attorneys, have had with [p]ersons [c]oncerning this matter and [i]dentify all [d]ocuments [c]oncerning such [c]ommunications.” *Tracy v. NVR, Inc.*, 250 F.R.D. 130, 131 (W.D.N.Y. 2008). After thoroughly considering the issue, the court wholesale denied the motion to compel a response to that interrogatory. *Id. Tracy* does not distinguish between counsel, non-attorney agents and the parties themselves. *Id.* And neither should this Court.

In any event, seeking the names of every person Plaintiffs have talked with about the facts underlying their Complaint is overly broad and vague. Plaintiffs were wrongfully charged in 1990. Plaintiff Glenn spent 17 years behind bars and Plaintiff Pinkins spent almost 25 years behind bars. Plaintiffs have spoken to innumerable individuals over the years about their wrongful convictions. Plaintiff Glenn wrote a book and continues to speak publicly about his experience. Defendant Solan can get the pertinent "information simply by asking [Plaintiffs] to identify witnesses with knowledge about the underlying facts of the investigation." *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 2644243, at *5 (N.D. Ill. June 27, 2019). Plaintiffs have made Rule 26(a) disclosures—requiring identification of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claim or defenses" and will supplement their disclosures as necessary. Fed. R. Civ. P. 26(a)(1)(A)(i). The Court should deny Defendant Solan's motion to compel a response to Interrogatory No. 18.

**Conclusion**

Defendant Solan's Motion to Compel interrogatory responses to his contention interrogatories should be denied as premature. He has not carried his burden to show that early answers are fair and efficient under the circumstances. His motion to compel a response to his final interrogatory (No. 18) should be denied altogether.

Respectfully submitted,

s/ Margaret Campbell
One of Plaintiff's Attorneys
Jon Loevy
Elliot Slosar
Margaret Campbell
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607

**CERTIFICATE OF SERVICE**

I, Margaret Campbell, an attorney, hereby certify that on February 23, 2023, I filed the foregoing motion using the Court's CM/ECF system, which effectuated service on all counsel of record.

/s/ Margaret Campbell
*One of Plaintiff's Attorneys*