https://www.nwitimes.com/news/local/crime-and-courts/jury-awards-25-5-million-for-civil-rights-violations-by-hammond-police/article_aefc35e9-cc64-5508-be66-d2f64c86e2a6.html

ALERT    TOP STORY    URGENT

# Jury awards $25.5 million for civil rights violations by Hammond police

Sarah Reese
Nov 25, 2022



James Hill talks to The Times in May 2022 about having two separate convictions set aside since 2009.
John J. Watkins, file, The Times

Sarah Reese

**H**AMMOND — A U.S. District Court jury awarded $25.5 million in damages Tuesday to a Gary man because retired Hammond police Capt. Michael Solan violated his civil rights and deprived him of a fair trial in 1982.

The verdict in favor of James Hill Jr. marks the second time a federal jury has found against Solan and the city since 2006, when Hill's co-defendant in a criminal case tied to a robbery and rape in October 1980 won a $9 million verdict. That award was later reduced to $4.5 million as part of a settlement.

Hill, 59, and co-defendant Larry Mayes had their 1982 convictions set aside as part of separate petitions for post-conviction relief. A Lake Criminal Court magistrate found that the state had violated their rights by failing to turn over evidence to their defense attorneys ahead of their trials.

The jury for Hill's civil trial in U.S. District Court never heard about the post-conviction relief court's decision because of a pretrial ruling by Judge Theresa Springmann.

## People are also reading…

1. **Legendary singer Diana Ross to perform at Hard Rock Casino**
2. **Coroner seeking help to identify man found in Gary**
3. **Indiana Senate acts to preempt Valparaiso and all new local bans on retail dog sales**
4. **Schererville to host community meeting on future use of Illiana Motor Speedway land**

During the past three weeks, jurors in federal court were asked to focus on two police records, which were dubbed the "Deneal" and "Ezell" documents.

David Jensen, who represented Hammond, and Solan's attorneys, Shana and Donald Levinson, argued that Solan did not intentionally fail to turn over the documents and the records could not have changed the outcome of Hill's 1982 trial.

"We prize our freedom. We prize our stability," Jensen said. "But remember, it's all dependent on the good order of society. It's all dependent on the thin blue line, and Mr. Solan was a part of it."

Hill's attorneys — Scott King, Lakeisha Murdaugh and Russell Brown — told the jury that Solan illegally concealed or withheld the two documents from prosecutors, who subsequently were unable to turn the documents over to Hill's defense lawyers.

Preserving the good order of society is important, particularly when it comes to the government, King said.

"They have police and prosecutors, and they have prisons," he said. "They have got to follow the rules."

The jury deliberated for about three hours Tuesday before deciding to award $25 million in compensatory damages and $500,000 in punitive damages. The total matched an amount requested by Hill's attorneys.

The federal civil lawsuit was the first of two filed on Hill's behalf to go to trial.

The second, which is pending, involves a 2018 murder conviction overturned in 2021. Both of Hill's now-overturned convictions were linked to a constellation of crimes in 1980 that included the homicide of off-duty Hammond police Officer Lawrence "Larry" Pucalik and involved some of the same evidence.

Solan also was named in a third federal civil lawsuit filed in 2018 on behalf of two Gary men, who were exonerated of the Dec. 7, 1989, "bump and rape" of a Hammond woman.

Darryl K. Pinkins and Roosevelt Glenn have accused Solan and other officers of conspiring to manipulate witnesses, fabricate evidence and withhold exculpatory evidence. Their lawsuit also is pending.





He lost his dreams for a future life, his hope and his trust for others while he was forced to "live in a box," Murdaugh said.

To win his lawsuit, Hill had to prove by a preponderance of the evidence that the outcome of his 1982 trial could have been different if Solan had turned over the Deneal and Ezell documents.

The jury had to agree that the two documents were favorable to Hill; were either exculpatory or could have been used to impeach a witness; and were material to the case.

Murdaugh told jurors that the defense wanted them to believe acquittal would have been the only other outcome at Hill's 1982 trial, but that wasn't true. Criminal trials can end with a hung jury or in a mistrial.

"Mr. Hill was railroaded through the criminal-justice system, and the conductor of that train was Michael Solan," she said. "The co-conductor was the city of Hammond."

Jensen said the Deneal document "flunked the material test."

The document detailed a statement given by a jail inmate who had convictions for armed robbery and claimed that a man named Deneal had admitted to committing robberies in Hammond with Mayes. The inmate told police Deneal allegedly admitted that he and Mayes kidnapped and raped a woman from a gas station.

When the inmate's statement surfaced in February 1981, the gas station attendant already had identified Hill several times as one of her attackers, Jensen said.

Her observational powers were so good, she was off by only one number when she gave police a license plate number of the blue car used in her attack, he said.

She also came face to face with her attackers and likely could recall what they looked like because of a heightened state of awareness brought on by her traumatic experience, Jensen and Shana Levinson said.

"Mistaken identity is not something that happens in this instance," Levinson said.

According to trial testimony, the attendant reviewed hundreds of photos in the weeks after her attack with Gary and Hammond police before identifying Hill as a suspect.

On Nov. 17 or 18, 1980, the attendant saw Hill in a high school yearbook photo and said he looked like her attacker, Murdaugh said. The detective who showed her the photos testified that he wasn't satisfied with her initial identification of Hill, she said.

A lineup Dec. 30, 1980, at the Lake County Jail was tainted because the woman had seen Hill in multiple photographs presented to her, Hill's attorney said.

Murdaugh said the Deneal document "amounted to an outright confession, and Solan hid it."

The document, which did not include a case number, also showed that police spoke with the inmate's wife, who also talked about hearing Deneal and Mayes discussing robberies in Hammond, King said.

"You were witness to a first," King told the jury.

Hill's civil trial marked the first time Solan testified that he went to speak with Deneal after reviewing the report and ruled him out as a suspect in the gas station attendant's rape because Deneal wore a mustache.

Solan previously said he didn't disclose the Deneal document because it was confusing, King said.

Murdaugh said Solan's testimony about Deneal's mustache was "smoke and mirrors."

"We all know hair can be cut off," she said. "If we're going to use a mustache to rule someone out, I'm scared."

## The blue bag

Jensen said Solan disclosed the contents of the Ezell document to prosecutors and Hill's defense during a deposition several weeks before Hill's 1982 trial.

In addition, the trial transcript showed that the state and Hill's attorney questioned a witness named Ezell at trial about information contained in the document.

The document detailed a statement taken from a man named Ezell who played basketball with Hill. In the statement, Ezell said he knew Hill to carry a blue bag and that Hill told Ezell he'd gotten the bag from a friend. At Hill's 1982 trial, Ezell testified that Hill told him he made the bag himself.

Levinson said it was reasonable to infer that attorneys had the Ezell document in 1982 because of their questions at trial, and it was possible that the state didn't properly inventory discovery items.

"No one said, 'Where's the report?' because they had the report," she said.

Murdaugh said Ezell was facing a felony charge, which was reduced after he gave police a statement.

In addition, the document showed that Ezell called a teammate while police listened in and asked him about the blue bag.

Levinson read a transcript of Ezell's call to the jury.

Ezell said: "You know that blue bag that James used to have? They're trying to tell me I had the bag."

The person on the other end of the line replied: "They're trying to put it on you?"

Ezell said: "Ain't that a trip? But all the time, James Hill had the bag."

To which the other person responded: "He's slick."

Jensen and Levinson said the transcript was inculpatory because it showed that a second witness had seen Hill with the blue bag.

Hill's attorneys said the document showed Ezell's bias because he was upset that he'd been suspended from the basketball team after other players "squealed" on him for having alcohol.

Like the Deneal report, the Ezell report wasn't properly documented, King said. It contained the case number for the Pucalik homicide rather than the case number for the gas station attendant's rape.

King reminded the jury that a law enforcement expert called by attorneys for Hammond testified that proper documentation is a sign of a well-functioning police agency.

Solan testified that he unilaterally ordered a change to his department's documentation policy with regard to the constellation of 1980 cases.

Solan's testimony showed "a complete lack of oversight" at the Hammond Police Department, King said.

In his closing statements, King urged the jury to look at the high-school yearbook photo of Hill that became central to the state's case against him.

Even kids who grow up in the shadow of public housing get to have dreams, he said.

"The government cannot take them away by violating the rules and treating you like an animal," he said. "You can't take a kid — you can't take anybody — and cheat to lock them up. You can't do that."