**USDC IN/ND case 2:18-cv-00150-TLS-JEM   document 200-2   filed 02/23/23   page 1 of 6**

NEW YORK
**Medical Malpractice &
Accident Trial Lawyer**

**CALL NOW. 516.487.8207**

# $9 million man awarded for wrongful conviction

**Posted on Sep 08, 2006**

Region's $9 million man? Sept. 8, 2006 By Andy Grimm / Post-Tribune staff writer The city of Hammond has a very costly problem, and his name is Larry Mayes. In 1981, the Gary native was convicted in the abduction, rape and robbery of a teenage gas station clerk. A little more than 22 years later, DNA evidence won him his release. Two weeks ago, a jury awarded him $9 million, payable by the city and police Capt. Michael Solan. Mayes' lawyers plan to ask the court to award them another $2 million to $3 million for their fees. City defense attorneys, who already have been paid $788,273.93, have filed to appeal the verdict in Mayes' favor— and are still collecting fees themselves to handle the case. And Mayes was not the only suspect convicted in the 1980 rape. His co-defendant, James Hill Jr., served 17 years for the same crime, and two years ago petitioned to have his conviction overturned as well. Hill's case relies on several issues that won over jurors in Mayes' case, and attorneys familiar with both cases say that it is a virtual certainty that if Hill's conviction is vacated, a multimillion-dollar civil lawsuit will arrive at City Hall soon afterward. "I think the city of Hammond has a lot more to be afraid of with James Hill than they ever did with Larry Mayes," said Hill's attorney, Mitch Peters. Mayes' attorneys insist the city never offered a settlement before the trial, and Larry Mayes is not going to go away much cheaper than $9 million. "I'd think we'd be foolish to accept anything less," said Johnathan Stainthorp, Mayes' Chicago-based attorney. "The city could have gotten out of this much more cheaply. Anyone looking objectively at this case would've realized they had a huge

exposure right from the start." A new beginning Larry Mayes does not look like one of the richest men in Gary. Two weeks after his verdict was announced, $9 million to compensate him for his nearly 19-year stay at the Indiana State Prison in Michigan City, he still is living in a Gary apartment he shares with a friend and fellow former inmate. He has no car, and the lack of transportation cost him his job washing dishes at a restaurant. Last week, he had to change the phone number for the apartment. "People had been calling me that I haven't heard from in years," Mayes said. After spending 19 years trying to get out of prison, he now is afraid to leave his house. "If I go out … there's people that think I've got a million dollars …" Mayes is not a healthy man. At 57, he was one of the older inmates in Michigan City, and he said he suffered a heart attack behind bars. His clothes hang loosely from his slender, 5-foot-4-inch frame, and he continues to sweat for 30 minutes after the exertion of cleaning his house. "I do worry that I might not make it to see anything from the settlement." Hammond officials do not plan to make it easy. In a statement to the Post-Tribune, city Corporation Counsel Joseph O'Connor wrote: "The real issues of this 26-year-old case are not monetary in nature. That is why we are pursuing an appeal and every legal remedy to defeat Mr. Mayes. "If we paid Mr. Mayes at this point, we would simply surrender to a convicted rapist." Mayes is a convicted rapist, having been found guilty in a 1969 case in Detroit. He says he's been advised by his attorney not to talk about that case. And strictly speaking, Mayes was never found "innocent" in the Hammond rape — Lake County prosecutors, under pressure from Indiana University law students who had taken up Mayes' cause, simply decided there was not enough evidence to keep him in jail. Mayes, and Hill, were tried and convicted of the rape in a case that hinged largely on the victim positively identifying them as her attackers. But in 2002, after watching an episode of Montell Williams' talk show about convicts who were freed by DNA evidence, Mayes began writing letters to The Innocence Project, a not-for-profit legal group. DNA evidence, semen samples taken from a long-lost evidence file in Mayes case, did not match Mayes. Lake County prosecutors re-interviewed the victim and her father, and discovered she

had been hypnotized by Hammond Police detective Ray Myczak before she picked Mayes and Hill out of photo books and in lineups. "That floored me," said Richard Wolter, Mayes' defense attorney in the 1981 trial. Hypnosis was an interview technique that was briefly in fashion in criminal prosecutions, but is effectively inadmissable at trial. Former prosecutor Thomas Vanes, now a criminal defense attorney, said he had no idea his star witness had been hypnotized. With DNA evidence available that was favorable to Mayes, Vanes admits the case might never have gone to trial. Asked after Mayes' civil trial if he believes Mayes is guilty of the rape, Vanes replied: "No. Not anymore," he said. "I'm not 100 percent convinced he did not do it, but I think it is very unlikely." Mayes' co-defendant, James Hill, and his attorneys in 1981 also did not know about the hypnosis, or various suggestive techniques used by detectives during the investigation. When Hill, now a barber living in Gary, read about Mayes' release, he contacted a lawyer as well. Hill, who did not grant an interview, was 17 when he was sent to Michigan City and served more than 17 years. "He feels like anyone who spent 17 years in prison for a crime they did not commit," Peters said. "His prison record is clean. He is a productive member of society that has never had any contact with the law since. "And he basically grew up in prison." Police put on trial In Mayes' civil case, his attorneys put the Hammond Police Department, at least the 1980s version, on trial. Top police officials, his attorneys maintained, were political hacks. Department record-keeping practices were well below standards for most departments, they maintained. In Mayes' investigation specifically, a rape case with connections to a series of armed robberies that included one in which an off-duty Hammond cop was killed, detectives settled on Mayes as a suspect and steered the investigation to him. The hypnosis session could have implanted false memories of details that linked Mayes to the crime. Investigators showed her two or three stacks of suspects' photos, an unusual practice. Only Mayes' and Hill's pictures were included in each of the arrays of photos. None of this information was disclosed to Mayes' attorney in 1981. County prosecutors only found out about the hypnosis session after they reinterviewed the victim and her father after

Mayes petitioned to have his conviction overturned. But attorneys for the city put Larry Mayes back on trial. They never conceded he was innocent. Taking a page from Vanes' 1981 prosecution, they pointed out the false alibi Mayes gave investigators and his attempt to contact a juror in his trial as evidence of the behavior of a guilty man. They tried to cast doubt on the DNA evidence that was crucial to Mayes' release, noting that it had been lost for several years and no one could account for how it had been handled if no one could find it. In depositions, defense witnesses characterized the hypnosis as a "relaxation technique." They noted that in different court documents, Mayes said he had between two and six children and did not pay child support. Two of Mayes' children died while he was in prison. The city will continue to maintain Mayes' guilt on appeal. Federal Magistrate Judge Paul Cherry blocked the defense from bringing up Mayes' prior rape and felony convictions, and that he was implicated — but never charged — in other crimes. The DNA evidence, and the gag order on Mayes' convictions, will figure as key issues in the city's appeal, Mayor Tom McDermott said. "This is a money issue," McDermott said. "When all this happened, I was 10 years old. This is not about defending the integrity of the Police Department 20 years before I was mayor. "I think $9 million is an unreasonable number, and we will fight that verdict tooth and nail." Mayes' attorneys had said they would seek $20 million, "so by fighting this case, I look at it as we've already saved the city $11 million. "We have some very good issues on appeal, and we could get a new trial and a new verdict, and we could end up saving the taxpayers of Hammond even more money ... if (Hill) files a lawsuit, we will fight that one, too." If his jury award comes due, the city is self-insured and wouldn't have anywhere near the reserves to pay Mayes, McDermott said. That would force the city to issue bonds, paid off with a new tax—just for Larry Mayes. 'The whole world was against me' When he closes his eyes, Mayes can still hear the metallic "plink" of Hammond Police detective Robert Townsell, the lead detective in his case, snapping his lighter open and closed as he told him yet another piece of evidence linked him to the rape of a 19-year-old clerk at the Martin Gas Station. "I always said, 'Well, if you got all this stuff, why you

talkin' to me?' " Mayes said. But the bravado was phony. In his cell in the Lake County Jail, Mayes' heart would race. He didn't know James Hill, a man who was half his age. He didn't know the woman who told jurors she knew Hill and Mayes were friends. He didn't know the clerk, who sat in the witness stand and calmly pointed to him and identified him as the man who raped her. "I felt like the whole world was against me, and I didn't know why," Mayes said. Mayes did not find Jesus in prison, nor did he find peace or forgiveness. In prison, he pressed license plates and spent hours in the prison law library researching cases that could get him out of jail. When his son died while he remained behind bars, he refused to take anti-depressants prescribed for him, fearing Xanax would blunt his outrage. "I didn't want to give up," he said. When he left Michigan City, he turned to the prison gates and flipped the building the bird. He said he would like to see Solan pay a share of his $9 million, and wishes Townsell were alive to be badgered by his lawyers, humiliated on the witness stand. Vanes, the prosecutor, is now in private practice and shares office space with Wolter. They talked about the case often over the years. Mayes shook his hand after he was released. The woman who called him a rapist — he is ambivalent about. She is now a family therapist living in New Mexico. Not sympathetic, just not mad like he is at everyone else associated with the police "I hate that (the rape) happened to her. I don't blame her," he said. "They used her, too." Mayes never liked Hammond when he was growing up in Gary. The town had a reputation in the black community as being unfriendly to people of color, and he was worried as soon as Hammond detectives began asking about him in his neighborhood. He knows that Hammond residents cheered when he was convicted, that they hated him then and will hate the thought of paying off his judgment. "They hate me for what Hammond police did to me," he said. "They should pay, so they remember. So this doesn't happen to someone else again. Get their Police Department in order." If he sees his millions, Mayes would like to build new homes in Gary. He would like to go on a trip around the world. He would take Candy Lucas, a cook he met at the restaurant where he worked after his release, and her two sons. He would bring his roommate, Dectrick Raspberry,

too. Raspberry drove him 20 miles to work every morning until he couldn't make the trip anymore, then took him in after he lost his job and Candy moved in with other friends. All in all, modest goals, he admits. "I would like for people to remember me, to say I did something to help the city," he said. The appeals process could take months, years that he may not have. Now that a judgment has been ordered, if he should die, his estate could continue to press for payment. There is a chance that a new trial would see him get far less. Get nothing. "I don't believe that will happen," Mayes said. "I don't believe that God would do that." McDermott said the city has far too much at stake to back down. "I am not going to just write him a check," he said. "We will continue to fight this case."

Read More About $9 million man awarded for wrongful conviction…