IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROOSEVELT GLENN, SR. and DARRYL KEITH PINKINS, SR., | )<br>)<br>) |
| Plaintiffs, | ) Case No. 2:18-cv-150 TLS/JEM<br>) |
| v. | ) Hon. Theresa L. Springmann<br>) District Judge<br>) Magistrate Judge John E. Martin |
| City of Hammond, *et al.*, | )<br>) |
| Defendants. | ) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO SUBSTITUTE**

Plaintiffs, ROOSEVELT GLENN, SR. and LADONYA PINKINS and DARRYLN PINKINS, as co-administrators of the Estate of DARRYL KEITH PINKINS, SR., by and through counsel, respectfully submit this reply in support of their Motion for Substitution of a Party (Dckt. 222, 225), stating as follows.

**Introduction**

Plaintiff was wrongfully convicted and imprisoned for nearly 25 years. Dckt. 1, ¶ 3. As alleged in the Complaint, it took decades for Defendants' egregious misconduct to unravel and for the truth to finally set Plaintiff free. *Id.* Plaintiff's exoneration did not reverse the decades of wrongful imprisonment that took an irreversible toll on Plaintiff's physical and mental well-being. Tragically, Plaintiff's death on Feb 3, 2024 guaranteed that he would never see justice for the decades stolen from him. Plaintiff's Estate now seeks to pursue justice in their father's name. On May 8, 2024, Plaintiff timely moved to substitute the representatives of his Estate under Fed. R. Civ. P. 25(a)(1); Dckt. 222. The Motion for Substitution was filed within the 90-day time

1

limit following the Court's order noticing Mr. Pinkins' death. Fed. R. Civ. P. 25(a)(1); Dckt. 220.

Defendants City of Hammond, Michael Solan, and Leo Finnerty filed a Response in Opposition on May 22, 2024. Dckt. 225. Defendants do not dispute the timeliness of Plaintiffs' motion, or that LaDonya Pinkins and Darryln Pinkins, co-administrators of his Estate, are the proper parties for substitution. *Id.* Instead, Defendants' five-page response asserts that Plaintiff Pinkins' § 1983 claims do not survive his death. *Id*. Defendants' position is contrary to federal and Indiana law. Plaintiff's § 1983 claims survive his death, and this Court should substitute in his place the co-administrators of his Estate. For the reasons set forth below, Plaintiff's motion should be granted.

## Argument

Plaintiff's §1983 claims survive as a matter of federal and Indiana law. Whether federal claims survive is a question of federal law. *Bennett v. Tucker*, 827 F.2d 63, 67 (7th Cir. 1987). Section 1983 is silent on the question of whether claims survive the death of a party. *Id.* Therefore, 42 U.S.C. § 1988(a) instructs courts to look first to applicable state law to determine whether claims survive, but if state law is hostile to the purposes of § 1983, then federal common law controls instead of state law. *Id.* Analyzing whether § 1983 claims survive, the Seventh Circuit, in a long line of cases, has analogized § 1983 constitutional claims to state-law personal injury claims, consistent with the treatment of § 1983 by the Supreme Court and Seventh Circuit in other contexts, and it has asked whether state survivorship statues allow personal injury claims following the death of a party. *Wilson v. Garcia*, 471 U.S. 261, 278 (1985); *Bennett*, 827 F.2d at 67-68.

The same approach should be taken here. Plaintiff's claims are fundamentally personal injury claims. Contrary to Defendants' view, Indiana law provides that personal injury claims survive the death of a party and can be pursued by the decedent's estate for all damages suffered prior to death. Ind. Code Ann. § 34-9-3-1 *et seq* (2024). No more analysis is required to substitute the Estate here.

But if Defendants were correct (they are not) that Indiana law does not permit claims like Plaintiff's to survive the death of the party, it would still not mean that Plaintiff's federal claims do not survive their death.[1] Instead, in that situation, Indiana law would be hostile to the purposes of § 1983—to provide redress for victims of civil rights victims, including those who have had their right to due process—because Indiana law would have the effect of barring all such claims. *See Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1189-90 (7th Cir. 1985). Section 1988 provides that when state law conflicts with the purposes of § 1983, then the federal court must fashion a federal common-law rule that effectuates § 1983, which in this case would be a rule that § 1983 claims survive the death of a plaintiff in a case arising from Indiana. 42 U.S.C. § 1988; *Anderson v. Romero*, 42 F.3d 1121, 1123-24 (7th Cir. 1994); *Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997). That is the only rule that is consistent with the treatment of § 1983 claims like Plaintiff's in the other states in the Seventh Circuit—Wisconsin and Illinois—where these claims routinely survive the death of a Plaintiff. *Id.* Moreover, it is the only rule consistent with the purpose of § 1983. To the extent that Defendants or cases they cite suggest otherwise, they are inconsistent with the directives of Congress, the Supreme Court, and the Seventh Circuit.

---

[1] Defendants' proposition would have an absurd impact on §1983 claims. For instance, it would effectively bar all wrongful death claims, thereby enabling all government actors to never be held accountable for constitutional violations so long as the Plaintiff died.

    **I.    Survivability of Federal Claims is a Federal Question, and State Law Only Applies if it Does Not Frustrate the Purposes of § 1983**

Federal law governs whether a federal claim survives the death of a party. *Bennett*, 827 F.2d at 67. "However, § 1983 is silent on the question of survivability." *Id.* As a result, courts "look to 42 U.S.C. § 1988, which provides that if federal law does not provide a rule of decision in a civil rights case, federal law will incorporate the appropriate state law, unless that law is 'inconsistent with the Constitution and laws of the United States.'" *Id.* (quoting 42 U.S.C. § 1988); *see also Robertson v. Wegmann*, 436 U.S. 584, 589-90 (1978) ("Under § 1988, this state statutory law, modifying the common law, provides the principal reference point in determining survivability of civil rights actions, subject to the important proviso that state law may not be applied when it is 'inconsistent with the Constitution and laws of the United States.'"). Accordingly, Indiana law governs the survivability analysis here only if application of state law does not frustrate the purpose of § 1983. *Id.* If state law conflicts with its purpose, federal common law rules control. *Id.*

    **II.    The Seventh Circuit Analogizes § 1983 Constitutional Claims to State-Law Personal Injury Claims to Determine Survivorship**

With that framework in mind, the first question the Court must decide is how a § 1983 action should be treated under Indiana's survival statute, which does not expressly address federal claims. Ind. Code Ann. § 34-9-3-1 *et seq* (2024). The Seventh Circuit has long provided a clear and simple answer to this question: when conducting the analysis of whether a § 1983 claim survives under a state survivorship statute, § 1983 claims are always analogized to personal injury claims, not to other types of claims. *Bennett*, 827 F.2d at 67-68 ("[I]n order to determine whether a § 1983 claim survives, we must look to the state law governing whether a personal injury claim survives.").

4

The Seventh Circuit's view that § 1983 claims should be analogized to state personal injury actions for the purpose of survival analysis is consistent with the U.S. Supreme Court's treatment of § 1983:

> In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from 'personal injuries.'

*Wilson*, 471 U.S. at 278 (quoting *Almond v. Kent,* 459 F.2d 200, 204 (4th Cir. 1972).

In addition, analogizing § 1983 actions to state personal injury action is the norm in many contexts, because it avoids the alternative of time-consuming, confusing litigation in which courts are required to analogize different § 1983 claims to different types of state torts. *Wilson*, 471 U.S. at 271-75. For example, the Supreme Court and Seventh Circuit take the same approach in the context of statutes of limitations, analogizing § 1983 claims to state personal injury claims to determine the length of a statute of limitations. *Wilson*, 471 U.S. at 262, 274; *Bennett*, 827 F.2d at 67-68; *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) ("Claims brought under § 1983 are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred."); *Monroe v. Columbia Coll. Chicago*, 990 F.3d 1098, 1100 (7th Cir. 2021) ("[T]he Supreme Court held that the applicable statute of limitations for section 1981 and section 1983 claims is the state period for personal injury torts."). Given the "numerous and diverse topics and subtopics" § 1983 encompasses, "[i]f the choice of statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitation should apply to each § 1983 claim." *Wilson*, 471 U.S. at 262, 274 (the tort of personal injury "is supported by the nature of the § 1983 remedy" and "the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal civil rights remedy.").

Other circuits uniformly analogize § 1983 claims to state personal injury claims when determining whether claims survive the death of a party. *See*, *e.g.*, *Crabbs v. Scott*, 880 F.3d 292, 295 (6th Cir. 2018) (describing survivorship statutes as "siblings" or "at least cousins" of time-bar statutes, and agreeing with Seventh Circuit that "characterizing all § 1983 claims as personal injury actions [is] 'equally important' in the survivorship context and that it would be 'anomalous' to draw a distinction between survivorship statutes and statutes of limitation.") (quoting *Bennett*, 827 F.2d at 67-68); *Jackson v. City of Cleveland*, 925 F.3d 793, 809-12 (6th Cir. 2019); *Price v. Montgomery Cnty.*, *Kentucky*, 72 F.4th 711, 719 (6th Cir. 2023) (when "determining survival of § 1983 claims, we do not break them out individually[,]" noting "[t]he level of generality at which we view those claims is that of basic personal injury actions" in finding that plaintiff's claims survived).

This Court should treat Plaintiff's claims as personal injury claims for purposes of determining whether they survive the death of a party under Indiana law. Here, Mr. Pinkins brought a § 1983 action against Defendants for their misconduct that caused him unimaginable personal injury. Dckt. 1. He suffered enormous physical harm from the time Defendants framed him in 1991, during the nearly 25 years he was wrongfully incarcerated, until the day he died. Dckt. 1, ¶ 3. As with other § 1983 claims, claims of wrongful conviction are principally claims for personal injuries, and not injuries of other types.

### III. The Indiana Survivorship Statute Expressly Provides that Personal Injury Actions Survive for Injuries to the Deceased Party Suffered Prior to Death

Once this Court concludes that Plaintiff's § 1983 claims are best analogized to personal injury claims, the next step is to determine whether Indiana law provides for the survival of such claims, or alternatively, whether Indiana law would bar such claims upon death of a party, in which case Indiana law would conflict with § 1983's purposes. To conduct that analysis,

6

consistent with Seventh Circuit precedent, this Court should look to Indiana's state survivorship statute to determine how it would treat a personal injury action where the plaintiff died. *See Romero*, 42 F.3d at 1123-24 (deciding that plaintiff's 8th Amendment § 1983 claim should be treated as a personal injury claim, and concluding that such claims survived the death of a party under Illinois law); *Hutchinson on Behalf of Baker*, 126 F.3d at 898 (deciding that plaintiff's multiple claims under § 1983 should be treated as a personal injury claim, and concluding that such actions survived the death of a party, through the estate, under Wisconsin law).

Contrary to Defendants' argument, Dckt. 225, pp. 2-4, the Indiana survivorship statute provides that Mr. Pinkins' personal injury claims survive his death and can be pursued by his Estate in this action. The Indiana survivorship statute, Ind. Code Ann. § 34-9-3-1 *et seq* (2024), states that "[i]f an individual who is entitled or liable in a cause of action dies, the cause of action survives and may be brought by or against the representative of the deceased party except actions for" libel, slander, malicious prosecution, false imprisonment, invasion of privacy, and personal injuries to the deceased party, which the statute provides "survive only to the extent provided in this chapter." Ind. Code Ann. § 34-9-3-1(a) (2024). Defendants cite the exceptions in their response, Dckt. 225, p. 3, but they fail to acknowledge the last clause, which directs that personal injury claims survive "*to the extent provided in this chapter*." Ind. Code Ann. § 34-9-3-1(a) (2024) (emphasis added). Accordingly, the Court must read this provision along with the other provisions of the same chapter, including section four of the statute, which provides:

> (a) This section applies when a person:
>
>> (1) receives personal injuries caused by the wrongful act or omission of another; and
>> (2) subsequently dies from causes other than those personal injuries.

> (b) The personal representative of the decedent who was injured may maintain an action against the wrongdoer to recover *all damages resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived*. The damages inure to the exclusive benefit of the decedent's estate.

Ind. Code Ann. § 34-9-3-4 (2024) (emphasis added).

Contrary to Defendants' representation, this statutory text expressly provides for a personal injury action for damages preceding the death of the plaintiff to be brought by the estate following death. *Id.* Indiana cases so hold. *See*, *e.g.*, *Culver-Union Twp. Ambulance Serv. v. Steindler*, 611 N.E.2d 698, 704 (Ind. Ct. App. 1993) ("Actions brought under § 1983 are considered most analogous to state claims for personal injury"), *adopted in relevant part, vacated on other grounds in Culver-Union Twp. Ambulance Serv. v. Steindler*, 629 N.E.2d 1231 (Ind. 1994)); *Tracy For & on Behalf of Est. of Tracy v. Bittles*, 820 F. Supp. 396, 401-404 (N.D. Ind. 1993) (relying on *Bennett*, holding that "the decedent's civil rights claim, a personal cause of action, may be pursued in the name of the decedent's personal representative. This ruling effectuates the recognized policies important to the issue of survivability in § 1983 actions.").

As discussed in Section II above, as a matter of federal law, Plaintiff's § 1983 claims must be analogized to personal injury claims. Putting the two principles together, Plaintiff's claims survive death and Mr. Pinkins' claim can be pursued in this action by his Estate, for all damages that he suffered prior to his death. The Court's analysis should end here, as it need only apply the text of the Indiana statute to reach the same result—that § 1983 claims survive death in Indiana—that the Seventh Circuit has reached when conducting this analysis in Wisconsin and Illinois, as discussed above. The Court should grant the Motion to Substitute.

## IV. If Indiana Law Extinguished Plaintiff's Claims, As Defendants Suggest, Then § 1988 Would Require the Court to Apply Federal Common Law and Determine That Plaintiff's § 1983 Claims Survive Death

Importantly, if the Court were to accept Defendants' argument and find that Plaintiff's claims do not survive under Indiana survivorship law, that would mean that Indiana's law is hostile to § 1983 claims. In that situation, the Court would not hold that Indiana law bars Plaintiff's § 1983 claims following death. On the contrary, in the situation where state law is hostile to the purposes of § 1983, then Congress has provided in § 1988 that courts should *not* apply state law and instead should fashion a federal common law rule that helps enforce § 1983. 42 U.S.C. § 1988(a); *Bass by Lewis*, 769 F.2d at 1189-90; *Bennett*, 827 F.2d at 67; *Woods v. Illinois Dep't of Children and Family Services*, 710 F.3d 762, 765 (7th Cir. 2013).

When an innocent person is relieved from his wrongful conviction, the purpose of § 1983 is to provide the person with an avenue to hold those who caused such an injustice accountable for the injury they inflicted. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). The Seventh Circuit, in emphasizing the deterrence effect of § 1983, has held that "[s]uch restrictive state laws must give way to federal common law rules that permit recovery" for this category of damages. *Bass by Lewis*, 769 F.2d at 1189-90 ("In sum, in a section 1983 action, the estate may recover damages for loss of life, conscious pain and suffering experienced by the decedent prior to death, and punitive damages in a case in which the standard of *Smith v. Wade* has been satisfied.") (citing *Smith v. Wade*, 461 U.S. 30, 31 (1983)). *See also Culver-Union Twp. Ambulance Serv. v. Steindler*, 629 N.E.2d 1231, 1233 (Ind. 1994) ("Section 1983 was designed to prevent the states from violating the constitution (and certain federal statutes) and to

compensate injured plaintiffs for deprivations of those federal rights.") (citing *Baker v. McCollan,* 443 U.S. 137, 146 (1979)).

As argued above, Indiana law provides that personal injury claims survive the death of a plaintiff and applying that law, Plaintiff's § 1983 survive death. If the Court accepts that argument, then there is no conflict between Indiana law and federal law. On the other hand, if the Court accepts Defendants' restrictive interpretation of Indiana survivorship law, and it decides that Indiana law bars survival of foundational § 1983 claims, then that reading places Indiana law and § 1983 in direct conflict with one another.

If the Court finds that Indiana law would extinguish Mr. Pinkins' claims, then it must adhere to the framework of § 1988, decide that Indiana law and § 1983 are in conflict, and create a federal common law rule that allows for the survival of § 1983 claims for cases arising in Indiana. *See Bass by Lewis*, 769 F.2d at 1189-90; *Dixon v. Chrans*, 986 F.2d 201, 205-06 (7th Cir. 1993) (concluding that an Illinois statutory amendment was in conflict with § 1983 and declining to give it effect, pursuant to § 1988). Only such a common law rule would bring the survival of § 1983 claims in line with the Seventh Circuit's treatment of the survival of § 1983 claims arising in other states in the Seventh Circuit claims, *Romero* and *Hutchinson on Behalf of Baker*, and only such a rule would be consistent with national practice. 42 F.3d at 1123-24; 126 F.3d at 898; *Rosa v. Cantrell*, 705 F.2d 1208, 1222-23 (10th Cir. 1982) (listing various states and circuits in which "civil rights actions for damages suffered by the decedent survive the death of the injured party").

V.     **Defendants Rely on Flawed, Outlier Caselaw in Objecting to the Survival of Mr. Pinkins' Claims**

In their opposition, Defendants claim "the precise issue of whether the deceased's claims have abated has already been resolved against the deceased's daughters as a matter of law by the Seventh Circuit in *Bentz*[.]" Dckt. 225, p. 4. Defendants are wrong about the effect of *Bentz*.

*Bentz v. City of Kendallville* involved a § 1983 action in Indiana based on claims of unreasonable seizure and unreasonable search and trespass, brought against the city and individual police officers in which the plaintiff died while the appeal was pending. 577 F.3d 776, 777-78 (7th Cir. 2009). The defendant city moved to dismiss the appeal, arguing that the plaintiff's claims did not survive his death. *Id*. at 778. Importantly, in that case the plaintiff forfeited the entire argument, set out above, about how § 1988 directs courts to conduct the analysis of the conflict or agreement between Indiana and federal law. *See id.* at 778-79 (noting that the plaintiffs forfeited the argument because they did "not claim that the application of state law . . . [was] inhospitable to the purpose of § 1983 actions," and so the court proceeded to application of the Indiana state survivorship statute without consideration of § 1988). Plaintiff here makes the argument that was forfeited in *Bentz*, and for that reason alone this Court can conduct the analysis above and decide that *Bentz* does not control.

But there are other reasons that *Bentz* should not apply here. There, the Seventh Circuit "appl[ied] Indiana law in deciding whether [the] § 1983 claims survive." *Id*. at 779 (citing *Robertson*, 436 U.S. at 594). Then—*without citation*—the *Bentz* Court stated, "[i]n order to apply Indiana law, we must properly analogize [the] § 1983 claims to the appropriate Indiana torts." *Id*. It analogized the claims not to false imprisonment and personal injury, but to invasion of privacy, and concluded that those claims do not survive death in Indiana. *Bennett*, 827 F.2d at 68; *Wilson*, 471 U.S. at 275.

First, *Bentz* misinterpreted the Indiana survivorship statute. The *Bentz* opinion (and Defendants' opposition here) overlooked the statutory provision explicitly allowing for a deceased party's claims to survive when caused by the wrongdoing of others prior to death. Ind. Code Ann. § 34-9-3-4(b); *Bennett*, 827 F.2d at 68. *Bentz* ignored that personal injury actions survive death under a separate provision of the statute.

Second, *Bentz* conducted an incomplete analogy that departs from established Supreme Court and Seventh Circuit precedents. Instead of analogizing the § 1983 claim to a personal injury action, as precedents instruct, see Section II above, *Bentz* analogized the claim to false imprisonment and invasion of privacy, which do not survive death, and stopped there. *Bentz*, 577 F.3d at 780-83 ("Indiana law establishes that [plaintiff's] § 1983 claim for unreasonable seizure is analogous to an Indiana tort claim for false imprisonment, which does not survive a decedent's death," and that "the most analogous state tort to [plaintiff's] unlawful entry claim is invasion of privacy, which does not survive under the Indiana survival statute.").

Numerous cases reject this approach. *See, e.g.*, *Bennett*, 827 F.2d at 68 (rejecting the notion that § 1983 claims should be individually analogized to specific torts). *Bentz* engaged in exactly the kind of analysis that the Supreme Court cautioned against in *Wilson*, when it held the choice statute of limitations cannot depend on the legal theory of each claim, because then multiple limitations periods could apply to each claim, and multiple limitations periods could arise in one case. *Wilson*, 471 U.S. at 274-75. The Court further explained that analogizing each § 1983 claim to a state law claim was inappropriate because identifying statutes of limitations was supposed to be an "uncomplicated task," not the source of "unproductive and ever-increasing litigation" requiring "useless litigation on collateral matters." *Id.* at 275.

Finally, not only did *Bentz* fall short in its analogy, but it did not perform a full § 1988 analysis. It analogized plaintiff's § 1983 claims to false imprisonment and invasion of privacy and found that they had abated. *Bentz*, 577 F.3d at 781-83. The court should have continued the analysis required under § 1988 to determine that the claim was personal injury in nature and survived in the state of Indiana. This would have aligned with the goals of § 1983, which include "deter[ring] state actors from using the badge of their authority" to violate individual constitutional rights. *Wyatt*, 504 U.S. at 161. Mr. Pinkins' position (as represented by his Estate) is that, in addition to the goal of deterrence, § 1983 provides redress for victims of official misconduct exactly like Mr. Pinkins and that extinguishing his claims would conflict with these goals. *See* 42 U.S.C. § 1988; *Wyatt*, 504 U.S. at 161; *Bass by Lewis*, 769 F.2d at 1189.[2]

Thus, even if this Court disregards precedent and follows the *Bentz* approach to piecemeal tort analogies, the Court should conduct the final step in the § 1988 analysis and hold that extinguishing Mr. Pinkins' claims would frustrate the purposes of § 1983. Such an outcome would deprive Mr. Pinkins of constitutional redress for his wrongful conviction, fail to deter future misconduct, and encourage time-consuming, unnecessary litigation. It would also treat § 1983 claims as a uniquely restrictive category of personal injury litigation in which plaintiffs who die can no longer pursue relief. Taken together, this would depart from the way these claims are treated across the country.

---

[2] In addition to ignoring binding Supreme Court and Seventh Circuit precedent in relying on *Bentz*, Defendants refer to the district court's opinion in *Sims v. City of Elkhart* in support of their contention that counsel for Mr. Pinkins already "litigated this same issue before in this district and lost." 3:19-CV-1168 JD, 2022 WL 3348833 (N.D.Ind. 2022); Dckt. 225, p. 2. This Court should decline to follow any district court opinion that ignores the binding precedent laid out above in Sections I-III.

Because the Seventh Circuit allows personal injury claims of this nature to survive the death of a plaintiff under Indiana law and Mr. Pinkins' § 1983 claims must survive against Defendants. As a result, substitution of Mr. Pinkins' daughters, as co-administrators of his Estate, is proper under Rule 25.

## Conclusion

For the reasons stated above, the Court should grant Plaintiff's Motion to Substitute (Dckt. No. 222).

Respectfully submitted,

/s/ Kathryn Montenegro
One of Plaintiffs' Attorneys

Jon Loevy
Elliot Slosar
Margaret Campbell
Jordan Poole
Kathryn Montenegro
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902

## **CERTIFICATE OF SERVICE**

I, Kathryn Montenegro, an attorney, certify that on June 12, 2024, I delivered by electronic means a copy of the foregoing status report to all counsel of record.

/s/ Kathryn Montenegro